James Clarence **MOORE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01-90-00715-CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 16, 1992.

Tony Aninao, Houston, for appellant.

John B. Holmes, Dist. Atty., Kimberly Aperauch Stelter, Asst., Houston, for appellee.

Before TREVATHAN, C.J., and O'CONNOR and COHEN, JJ.

## OPINION

O'CONNOR, Justice.

After finding the appellant, James Clarence Moore, guilty of aggravated robbery and the enhancement allegations to be true, the jury assessed punishment at 65–years confinement. We affirm.

### 1. Fact summary

The complainant, Gilinda Tapia, testified that she was sweeping the parking lot outside the convenience store where she worked when the appellant drove up at about 2:00 a.m. Tapia followed the appellant into the store and watched as he walked to the coolers where the soft drinks were kept. The appellant selected a 16–ounce, glass bottle of Coke and brought it to the front counter. As Tapia was ringing up the sale, the appellant suddenly struck her with the Coke bottle. The appellant took the cash from the register and then drove off.

A Houston police officer on patrol arrived shortly after the appellant left and got a description of the robber and his car. All other officers on patrol were notified. Officer Zitman, after receiving the dispatch, spotted a car matching the description traveling at a high rate of speed. After determining that the driver also

matched the given description, Zitman attempted to pull the appellant over.

A high speed chased followed, reaching speeds in excess of 100 miles an hour. The appellant finally lost control and struck a pole. The appellant was removed from the car and searched for weapons. In his pocket, the appellant had 48–one-dollar bills and a five-dollar bill.

The appellant was taken back to the store for a positive identification by Tapia. Tapia testified that when the appellant was brought back to the store, the appellant cursed and laughed at her. An officer also testified that the appellant "did his best to intimidate" Tapia.

## 2. Lack of remorse=Comment on failure to testify

In point of error one, the appellant argues the prosecutor, during closing argument at the punishment stage, commented on the appellant's failure to testify, thus, violating the federal constitution, the state constitution, and article 38.08 of the Texas Code of Criminal Procedure. Article 38.08 provides that:

Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause.

TEX.CODE CRIM.P.ANN. art. 38.08 (Vernon 1979).

▪ During closing argument, the prosecutor argued:

Now, think about when you are thinking about what the appropriate punishment should be, what are the two schools of thought of punishment. [Defense counsel] talked to you a little bit about this on voir dire, rehabilitation and deterrence. When you are thinking about those things, think about who this defendant is and what he did. Think first of all about what is rehabilitation? Who is somebody who is capable of being rehabilitated? Ask yourselves, somebody who is capable and willing to be rehabilitated should start with some sort of remorse for what

they have done, and ask yourself if James Clarence Moore has at one time shown any shred of remorse for what he did to Gilinda Tapia.

Defense counsel: Object to that on commenting on the defendant's failure to testify.

The court: Overruled.

Prosecutor: What I'm referring to is the fact that when he was brought back to the scene of the robbery he laughed at her, cursed her, tried to intimidate her. Is that somebody who is capable of even wanting to be rehabilitated?

The appellant contends the prosecutor's argument, that he showed no remorse, was an impermissible comment on his failure to testify. The appellant argues that only he could have given evidence or testimony as to his mental state. *Dickinson v. State,* 685 S.W.2d 320, 324–25 (Tex.Crim.App. 1984); *Owen v. State,* 656 S.W.2d 458, 459 (Tex.Crim.App.1983).

▪ For the prosecutor's argument to amount to an impermissible comment, we must view the argument from the jury's standpoint. Viewing it from the jury's standpoint, before we can reverse, we must decide that the jury would necessarily and naturally interpret the argument as a comment on the appellant's failure to testify. *Montoya v. State,* 744 S.W.2d 15, 35 (Tex. Crim.App.1987) (op. on reh'g). It is not sufficient that the prosecutor's language might be construed as an implied or indirect allusion to the appellant's failure to testify. *Id.* In applying this standard, the facts and circumstances of each case must be analyzed to determine whether the language used was of such a character. *Id.*

The appellant asks us to consider the following cases as support for his argument that a prosecutor's comment on a defendant's lack of the remorse is a direct comment on the defendant's failure to testify: *Montoya,* 744 S.W.2d at 37; *Dickinson,* 685 S.W.2d at 325; *Owen,* 656 S.W.2d at 459–60; *Elkins v. State,* 647 S.W.2d 663, 667 n. 7 (Tex.Crim.App.1983); *Thomas v. State,* 638 S.W.2d 481, 485 (Tex.Crim.App.

1982); *Coyle v. State,* 693 S.W.2d 743 (Tex. App.—Dallas 1985, pet. ref'd).

The State distinguishes these cases because in this case two witnesses testified that appellant did not show remorse when he was brought back to the scene of the crime. The State argues that even if the prosecutor's remark was improper, it was harmless. Thus, the State's argument is that when lack of remorse can be established though other evidence, the prosecutor's comment on it does not necessarily mean the prosecutor was commenting on defendant's failure to testify.

In *Montoya,* the prosecutor argued:

What do we hear from this man over here that it couldn't be deliberately, all my prior conduct, all these past actions, that the man that I am is not such that I'm going to commit acts of violence in the future and I did it?

*Montoya,* 744 S.W.2d at 34. We distinguish *Montoya,* because in this case, the prosecutor did not directly ask "what do we hear from this man," or any equivalent comment.

In *Dickinson,* the prosecutor argued:

You haven't seen one iota of remorse, one iota of shame.... And you didn't see any pity for the nine-year old retarded girl [the victim] that was led into this courtroom from [the defendant].

*Dickinson,* 685 S.W.2d at 322. The Court of Criminal Appeals held the comment was one necessarily on defendant's failure to testify because only the defendant could have testified about his mental state. *Id.* at 324. We distinguish *Dickinson* because in this case, there was evidence from two other witnesses that supported the conclusion the appellant was not remorseful.

In *Owen* the prosecutor argued during the punishment phase of trial:

They had the opportunity to present any evidence to you that they wished. I would submit to you that the first step in rehabilitating somebody, the first step in granting somebody probation is for him to at least say that he is sorry for what happened.

*Owen,* 656 S.W.2d at 459. In *Owen,* it was clear the prosecutor meant that the defen-

dant did not present evidence at trial that he was sorry. We distinguish *Owen* because in this case, the prosecutor did not make a comment on the appellant's failure to express remorse at the trial.

In *Thomas,* the prosecutor argued:

You didn't hear one single solitary bit of contrition on the part of this defendant from his witnesses nor his attorney. He had his wife and sister up there. They didn't tell you, "Boy, he's sorry about this." ... You didn't hear one single bit of that and I guarantee you if he was sorry for what he had done—and I submit he is not the least bit sorry—you would've heard about it from his witnesses.

*Thomas,* 638 S.W.2d at 482. The Court of Criminal Appeals held the prosecutor could not comment on the defendant's failure to present witnesses to testify that he was sorry because the defendant could not properly introduce such testimony. *Id.* at 484. Thus, the defendant could not be faulted for that which he could not accomplish through the testimony of his wife and sister. In spite of the court's holding, the court affirmed the judgment because the prosecutor's comment indicted, not the defendant, but the defendant's witnesses. *Id.* at 485. We compare *Thomas* to this case: In both cases, the prosecutor commented on the testimony of third persons about the defendant's remorse.

In *Coyle,* the prosecutor argued:

I want to talk about what he looks like in the courtroom right now. You've looked at him throughout the trial—and that's all I'm talking about, just his actions here in this courtroom while you've watched him. Have you seen by his actions one single iota of remorse for aggravated rape.

*Coyle,* 693 S.W.2d at 743. The Dallas Court of Appeals held that the prosecutor's comments amounted to a transparent attempt to call the jury's attention to the defendant's failure to testify. *Id.* at 744. We distinguish *Coyle* because in this case, the prosecutor did not make a comment on

the appellant's demeanor as evidence of his lack of remorse at the trial.

We hold that, under the facts and circumstances of this case, the jury would not necessarily and naturally interpret the argument as a comment on the appellant's failure to testify. The argument in this case was proper because it referred to conduct immediately following the commission of the offense and was based upon facts in evidence.

We overrule appellant's point of error one.

### 3. Ineffective assistance of counsel

In point of error two, the appellant argues his trial attorney rendered ineffective counsel by failing to object to certain State exhibits used for enhancement purposes. The appellant contends the misdemeanor judgments and sentences admitted at the punishment stage were not properly certified by the clerk of the convicting court. We disagree.

■ Allegations of ineffective assistance of counsel will be sustained only if they are firmly founded. *Faz v. State*, 510 S.W.2d 922, 926 (Tex.Crim.App.1974). The appellant relies on copies of the State's exhibits attached to the statement of facts. A review of the *original* exhibits supplied to this Court, however, reveal proper certification for each exhibit. *Soliz v. State*, 794 S.W.2d 110, 114 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). The appellant's argument is without merit.

We overrule point of error two.

### 4. In-court identification

■ In points of error three and four, the appellant argues the trial court erred in overruling his motion to suppress the in-court identification. In point of error three, the appellant contends the in-court identification was the product of an impermissibly suggestive, one-on-one identification procedure conducted after he was brought back to the store. We disagree.

The practice of showing suspects singly to crime witnesses for identification has been widely condemned, but a one-on-one show-up identification is not illegal per se. *Jackson v. State*, 682 S.W.2d 692, 695 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd). A single showup identification violates due process when the confrontation was (1) unnecessarily suggestive, and (2) conducive to the irreparable misidentification of the defendant. *Id.* The very nature of a single show-up identification conducted in the presence of police officers is suggestive, but the real question is whether it was so unnecessarily suggestive as to deny due process. *Id.*

Here, the appellant was brought back to the store, where Tapia took less than two seconds to make a positive identification. Although handcuffed and accompanied by the police, nothing suggests this was *unnecessarily* suggestive.

Even assuming it was unnecessarily suggestive, the show-up could not be considered conducive to the irreparable misidentification of the defendant. In making this determination, the Court is guided by five factors: (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Jackson*, 682 S.W.2d at 695.

In applying the factors from Manson we find: (1) just before and after she was assaulted, Tapia had plenty of opportunity see the appellant; (2) Tapia testified she paid close attention to the appellant as he moved about the store because it was late at night and no other person was in the store; (3) Tapia's description of appellant and his automobile was accurate; (4) Tapia showed a great deal of certainty when the officers brought him back to the store; and (5) the confrontation took place approximately one hour after the offense, a relatively short time.

Based upon the Manson analysis of the facts in this case, we hold the appellant did not show by clear and convincing evidence

that Tapia's in-court identification was tainted. *Madden v. State*, 799 S.W.2d 683, 695–96 (Tex.Crim.App.1990).

We overrule point of error three.

■ In point of error four, the appellant contends the in-court identification was the product of an illegal and unconstitutional arrest. The appellant argues Officer Zitman did not have sufficient probable cause to stop or arrest him. Again, we disagree.

■ Police broadcasts that are based upon probable cause and that report a felony and a description of the perpetrator satisfy the requirements for a warrantless arrest pursuant to article 14.04 of the Texas Code of Criminal Procedure.[1] *Law v. State*, 574 S.W.2d 82, 84 (Tex.Crim.App. [Panel Op.] 1978); *Brooks v. State*, 707 S.W.2d 703, 705 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd). When an officer receives a request for an arrest from another officer, the test for probable cause is what did the officer who made the request know. *Brooks*, 707 S.W.2d at 705. The officer who makes the request for the arrest may consider information furnished by a private citizen, whose only contact with the police resulted from having witnessed the criminal act. *Id.*

Here, Tapia provided an accurate description of the assailant and his car for police broadcast. Thus, Officer Zitman acted on sufficient probable cause.

We overrule the appellant's point of error four and affirm the judgment.

---

1. Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused. Tex.Code Crim.P.Ann. art. 14.04 (Vernon 1977).