Lucio DE LOS SANTOS, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–94–00471–CR.

Court of Appeals of Texas,
San Antonio.

Feb. 14, 1996.

Alex J. Scharff, Campion & Campion, San Antonio, for appellant.

Daniel Thornberry, Assistant Criminal District Attorney, San Antonio, for appellee.

Before STONE, HARDBERGER and DUNCAN, JJ.

STONE, Justice.

Appellant, Lucio De Los Santos, appeals from a conviction of murder. The jury sentenced appellant to life imprisonment and imposed a $10,000 fine. On appeal appellant alleges reversible error caused by: improper jury argument by the prosecutor during both the guilt/innocence and punishment phases of trial; ineffective assistance of trial counsel; and factual insufficiency of the evidence. We agree that the prosecutor presented reversibly harmful jury argument during the punishment phase of trial. However, we find no merit in appellant's remaining allegations of error. Accordingly, we affirm the conviction of guilt, but we remand the cause to the trial court for a new punishment hearing pursuant to TEX.CODE CRIM.PROC.ANN. art. 44.29(b) (Vernon Supp.1996).

## FACTS

Shortly after 2:00 a.m. on the morning of August 8, 1993, San Antonio Police Officers Phillip Franzone and Randall Smith responded to a call reporting a drive-by shooting at 1906 Poplar Street. The house at that address belonged to Roland Villarreal, the president of a gang called Damage, Inc. Several guests were present at the home, and they described the assailants to the officers as driving a 1990 or 1992 white Camero with red trim and a spoiler on the back.

While at the scene, the officers received another call at 2:17 a.m. for an incident nearby, possibly involving the same assailants. The officers responded to the call, and arrived at the second scene at 2:25 a.m. As soon as they arrived they were immediately called back to the original scene for another drive-by shooting. They returned to the Poplar Street residence at 2:30 a.m.

The officers observed ten to fifteen people, all hysterical and most of them intoxicated. One officer described the scene as "a borderline riot." The officers described the lighting as good, and said that people standing in the front yard would have no difficulty seeing people in a car driving by. Officer Smith testified that he interviewed Roland Villarreal at the scene, and Villarreal identified Steve Cabello as one of the shooters.

During the second attack at the Poplar Street residence, at least four people were shot. One of the injured, Maria How, re-

ceived a fatal shot while holding a three-month infant, who was also shot. Ballistics tests revealed that two different .9mm handguns had been fired, as well as a .22 caliber gun. Maria How was killed by a .9mm bullet. Although Roland Villarreal later admitted to police that he returned fire with his .9mm handgun, ballistics testing eliminated Villarreal's gun as the weapon used to kill Maria How.

Witnesses at the scene who testified for the State at trial included Ruth Villarreal, Herlinda Flores, Priscilla Jimenez and Patricia How. Each of the witnesses described that after the first shooting, the women went into the house to check on the welfare of their children, and the men went to the front yard. A couple of the men tried to follow the shooters. When the police arrived, more people went outside and remained there.

At the time of the second shooting Roland Villarreal was standing near the street, and Ruth Villarreal, Herlinda Flores, and Maria How and the infant she was holding, were on the front porch. Priscilla Jimenez was standing in the yard between the porch and the street. Roland Villarreal, Priscilla Jimenez, Maria How, and three-month old Raymond Villarreal were all shot.

Ruth Villarreal described the car used in the second drive-by as small and charcoal gray in color. She stated that two passengers were laughing and shooting from the vehicle, but she was unable to identify them. Herlinda Flores was also unable to identify the occupants of the car. She testified that she heard a car slow down and laughter emanate from within just before the second shooting. She described the car as a charcoal gray Mustang with a spoiler.

The only person to positively identify appellant was Priscilla Jimenez, who testified on direct examination that she clearly saw appellant in the passenger side of the car for about thirty seconds. On cross examination, she conceded that the time frame might have been closer to three or four seconds. She stated she was approximately eight or nine feet from the car as it passed, and that the lighting was good. She also said that she had never seen appellant before, but she knew of him because he and her roommate had previously lived together.

Jimenez testified that she identified appellant from two different photo arrays, one of which was conducted by Detective Gonzales at her father's house on August 8, 1993. Detective Gonzales testified that he was not assigned to the case until later and could not have shown her the photos on that date. He did, however, show her two photo arrays on August 15th and 22nd, from which she identified appellant both times.

A few miles away at approximately the same time as the shootings, a birthday party for appellant's father was ending. Rebecca Aviles, Peter Ramirez, and John Orta all testified on appellant's behalf, and placed him at the birthday party until 2:00 or 3:00 a.m. Peter Ramirez testified that appellant left the party at 2:30 or 3:00 a.m. with a man named "Jesse." Ramirez also testified that appellant was in a gang called the L.A. Boyz. John Orta confirmed that appellant was in the L.A. Boyz gang, and that the Boyz disliked the Damage, Inc. gang. Orta further testified that he left the party with appellant at about 2:20 to 2:30 a.m., and they were later flagged down by a man in a car with an injured passenger, Jesse Del Rio, who had been shot in the hand.

John Sandoval also testified for appellant. He testified that on the day of the shootings he questioned appellant, who denied any involvement in the shootings. Later he overheard appellant and Jesse Del Rio talking, and Del Rio admitted to shooting How. Del Rio also stated that he had the .9mm and "Steve" had the .22 caliber. Sandoval confirmed that appellant was a "big" member of the L.A. Boyz and that it was common knowledge that he disliked Damage, Inc. He also stated that Del Rio was a member of the Raiders gang—a gang that apparently considered Damage, Inc. an enemy.

In addition to appellant, two other people were implicated in the shootings: Steve Cabello and Jose (Jesse) Del Rio, the man whose hand had been shot. Del Rio was indicted and tried separately, but Cabello was never found.

Appellant gave two conflicting statements to the police. Appellant first stated that on the night of the shootings he was at his father's birthday party until 3:00 a.m. Appellant admitted that he was a member of the L.A. Boyz and that Steve Cabello was a member of the Raiders, and that the two gangs had one common enemy—Damage, Inc. Appellant also stated that he had heard on the news that both .9mm and .22 caliber guns were used in the shooting. At the time appellant gave this statement the fact that a .22 caliber gun was involved was not yet generally available public information.

In his second statement, appellant said he was actually at different party on the night of the shootings.[1] Appellant stated that after he left the party on the night of his father's birthday party, he was flagged down by an unknown person who asked him to take Jesse Del Rio to the hospital because he had been shot.

Appellant's theory at trial was mistaken identity. Appellant requested and received an instruction on alibi.

## FACTUAL SUFFICIENCY OF THE EVIDENCE

■ In his fourth point of error appellant asks this court to adopt a factual sufficiency standard of review because the evidence in this case, while legally sufficient, is not factually sufficient to support his conviction.

■ The Court of Criminal Appeals has now addressed the issue of factual sufficiency. *Clewis v. State*, No. 450–94, slip op., —— S.W.2d —— [1996 WL 37908] (Tex.Crim. App. January 31, 1996). In a factual sufficiency review, we must consider all of the evidence while being "appropriately deferential" so as to avoid substituting our own judgment for that of the trier of fact. *Id.* at 11. We may set aside the verdict only if the evidence is "so contrary as to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* at 4. The instant case does not meet this criteria. There were conflicting versions of appellant's activities on the night of the shootings. Appellant challenged the credibility of the State's eye-

witness who positively identified appellant. These conflicts are for the jury to decide. See *Green v. State*, 892 S.W.2d 220, 222 (Tex.App.—Texarkana 1995, no pet. h.). Point of error number four is overruled.

## IMPROPER JURY ARGUMENT

### Argument during guilt/innocence phase:

■ In his first point of error appellant contends he was denied a fair trial due to the prosecutor's improper jury argument. During closing argument at the guilt/innocence phase the prosecutor said when speaking about people planning a drive-by shooting,

> They know neighbors aren't going to come and say, 'I know who did it.' They are scared. Witnesses are scared to come forward. That is a drive-by.

Appellant contends this argument implies that witnesses were too scared to testify because of appellant, and that such an argument constitutes reversible error. In support of this claim appellant relies on *Johnson v. State*, 662 S.W.2d 368, 369–70 (Tex.Crim. App.1984) and *Thomas v. State*, 519 S.W.2d 430, 431 (Tex.Crim.App.1975).

■ Proper jury argument must fall within one of four general categories: (1) summation of evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) a plea for law enforcement. *Borjan v. State*, 787 S.W.2d 53, 55 (Tex.Crim.App.1990); *Allridge v. State*, 762 S.W.2d 146, 155 (Tex.Crim.App. 1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989).

We do not find the challenged argument to be improper. The prosecutor was speaking in general terms about drive-by shootings during this argument. The prosecutor neither stated nor implied that there were other witnesses who failed to testify because appellant frightened or threatened them. This is unlike the argument in *Johnson v. State*, in which the prosecutor argued that other witnesses saw the assault, but were "afraid to put the finger on the man that nearly killed another man." *Johnson v. State*, 662 S.W.2d

---

1. Other witnesses testified that the party for appellant's father was on the same night as the shootings, and that the second party appellant referred to occurred the next night.

at 369. Similarly, the *Thomas* case cited by appellant can be distinguished because the prosecutor in that case made reference to a specific eyewitness who did not testify, and speculated that she remained silent because "she is afraid of the man." *Thomas v. State,* 519 S.W.2d at 431.

Further, the argument in this case was a reasonable deduction from the evidence. At least one witness testified that in the past two years there had been nine drive-by shootings at Roland Villarreal's Poplar Street house. Likewise, one of the investigating officers testified that crowd control measures were used at the scene because of the chaos in what the officer described as a hostile neighborhood. In light of this evidence, the prosecutor's argument was proper. Accordingly, point of error one is overruled.

**Argument during the punishment phase:**

■ In his second point of error appellant complains of the prosecutor's jury argument made at the punishment phase of the trial, claiming the argument was an improper reference to his failure to testify. Appellant did not testify at any phase of the trial. During summation, the prosecutor made the following remarks:

> PROSECUTOR: What about the five people that are left dying? Any remorse for them? Did we ever hear an 'I am sorry. Let me see what I can do. Let me help you'?
>
> DEFENSE COUNSEL: Judge, I am going to object.
>
> PROSECUTOR: At the scene—

Defense counsel renewed his objection based upon the prosecutor's comment on appellant's failure to testify. The objection was sustained, and an instruction to disregard was given. A motion for mistrial was denied. The prosecutor immediately continued:

> PROSECUTOR: Did the Defendant ever stop and say, 'Oh, my God. I didn't mean to do all of this. I am sorry, Roland. I am sorry Priscilla.'?
>
> DEFENSE COUNSEL: Your Honor—

PROSECUTOR: He left the scene.

Counsel raised the same objection, which was sustained. Another instruction to disregard was given, and another motion for mistrial was denied. Shortly after this colloquy the prosecutor argued: "A life for a life. Rehabilitation? Has he shown any remorse?" Again, the trial court sustained appellant's objection, gave an instruction to disregard, and denied a motion for mistrial.

■ It is well-settled that a prosecutor cannot comment on a defendant's failure to testify. *Owen v. State,* 656 S.W.2d 458, 459 (Tex.Crim.App.1983); *Stafford v. State,* 578 S.W.2d 394, 395 (Tex.Crim.App.1978). Such comments violate an accused's right against self-incrimination contained in the Fifth Amendment to the United States Constitution and made applicable to the states through the Fourteenth Amendment. U.S. CONST. amend. V; TEX. CONST. art. I, § 10; TEX.CODE CRIM.PROC.ANN. art. 38.08 (Vernon 1979).[2] *Stafford v. State,* 578 S.W.2d at 395.

■ The prohibition applies to both direct and indirect references to the defendant's failure to testify. The prejudicial effect of a direct comment on the defendant's failure to testify often cannot be cured by an instruction to the jury to disregard. *Montoya v. State,* 744 S.W.2d 15, 37 (Tex.Crim.App. 1987). An indirect comment constitutes reversible error when it calls for a denial or response that only the defendant can give. *Losada v. State,* 721 S.W.2d 305, 313 (Tex. Crim.App.1986).

On appeal the State recognizes that remarks referring to a defendant's lack of remorse can be impermissible comments on the accused's failure to testify. *E.g., Elkins v. State,* 647 S.W.2d 663, 667 n. 7 (Tex.Crim. App.1983) ("No remorse, nothing whatsoever. He didn't show you anything. . . ."). The State contends, however, that the prosecutor's comments referred to appellant's lack of remorse at the scene and in the days immediately following the shootings, and not to his failure to testify. The State contends that

---

2. Article 38.08 states:
   Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause.

appellant's lack of remorse during this time period was established by testimony of witnesses who heard laughter as the car drove up just before the second shooting, and by Sandoval's testimony that while Jesse Del Rio apologized for the death of Maria How, appellant expressed no sorrow. The State thus argues that the argument did not call for a response that only appellant could have given through testimony. Finally, the State suggests that the prosecutor's remarks were at worst implied or indirect comments on appellant's failure to testify. We do not agree.

While references to a defendant's lack of remorse are not necessarily comments on the defendant's failure to testify, the language used by the prosecutor was posed as if appellant himself were speaking to the victims. The use of the personal pronoun "I" contradicts the State's argument that the remarks referred not to appellant's failure to testify, but to testimony supplied by other witnesses. *See Montoya v. State,* 744 S.W.2d at 36–37; *Cook v. State,* 702 S.W.2d 597, 598–99 (Tex. Crim.App.1984); *Cherry v. State,* 507 S.W.2d 549, 549–50 (Tex.Crim.App.1974). Language similar to this has been held to be error. *Swallow v. State,* 829 S.W.2d 223, 225–26 (Tex.Crim.App.1992) ("Somebody who was remorseful for their actions. Somebody who admits error.").

■■■ We find the prosecutor's remarks were direct comments on appellant's failure to testify. While we do not condone the obvious violation of TEX.CODE CRIM.PROC.ANN. art. 38.08 (Vernon 1979), our inquiry is not ended. We must still determine whether the impermissible argument constituted reversible error. Error in jury argument is subject to harm analysis under TEX.R.APP.P. 81(b)(2). *See Orona v. State,* 791 S.W.2d 125, 129–30 (Tex.Crim.App.1990); *Whiting v. State,* 797 S.W.2d 45, 48–49 (Tex.Crim.App.1990). The court must assess the error's probable impact on the jury in light of the entire record. *Orona v. State,* 791 S.W.2d at 130. It is not sufficient to determine harmfulness simply by examining whether there is overwhelming evidence to support the conviction, although that is a factor to be considered. *Id.* Rather, the court must examine the source and

nature of the error, whether it was emphasized by the State, and its probable collateral implications. *Id.* Also, the court must consider whether declaring the error harmless will "encourage the State to repeat it with impunity," and whether the error might have prejudiced the jurors' decision-making. *Id.*

■■■ As previously determined, the evidence in this case is ample to support the conviction of guilt and the sentence imposed. This factor, while not determinative, weighs in favor of a finding of harmless error. However, in addition to reviewing the evidence, we must also examine the entire argument, not merely isolated portions of counsel's remarks. *See Drew v. State,* 743 S.W.2d 207, 220–22 (Tex.Crim.App.1987).

The State's jury argument at the punishment phase began with a review of the court's charge, and a plea that appellant be given the maximum sentence because he was not entitled to "any breaks." No objections were made relevant to the complaints on appeal. Defense counsel then presented argument asking the jurors to view punishment as a matter of rehabilitation, and to consider appellant's young age in assessing punishment. On surrebuttal the State reviewed the facts surrounding the shooting, and described appellant as an "evil, horrible person," and then began arguing appellant's lack of remorse as set forth above. Following the lack of remorse argument, the prosecutor made two short arguments to which objections were sustained, and then closed with a plea for a life sentence. Reviewing the argument as a whole, it is apparent that a very large portion of the State's argument involved the prosecutor's references to appellant's failure to testify, a factor which weighs in favor of reversal.

■■■ The error in this case was brought on by the State, and usurps an accused's fundamental constitutional right against self-incrimination. *See* TEX. CONST. art. I, § 10. Further, the prosecutor continued with the offending comments even after two objections were sustained and instructions to disregard were given. When a prosecutor repeatedly disregards a court's orders the cumulative impact of the court's instruc-

tions is lessened and at some point the case must be reversed. *Boyde v. State*, 513 S.W.2d 588, 592–93 (Tex.Crim.App.1974). The nature and source of the error, and the repeated emphasis by the State, are factors which weigh in favor of reversal. Based upon our review of the entire argument and record, and in light of the maximum sentence assessed, we cannot determine beyond a reasonable doubt that the error made no contribution to the punishment. Accordingly, point of error two is sustained.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant contends his trial counsel was ineffective because counsel: (1) did not allow appellant to testify on his own behalf; (2) had a conflict of interest; (3) failed to request certain instructions; (4) failed to object to improper impeachment of a defense witness; and (5) failed to object to improper prosecutorial jury argument.

■■■ The Court of Criminal Appeals has adopted the test for ineffective assistance of counsel first enunciated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 686–88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *See Holland v. State*, 761 S.W.2d 307, 314 (Tex.Crim.App.1988), *cert. denied*, 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989). Under this two-pronged test, a convicted defendant must show that (1) his trial counsel's performance was deficient, and (2) the deficient performance prejudiced the defense to such a degree that he was deprived of a fair trial. *Holland v. State*, 761 S.W.2d at 314; *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex.Crim.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). Prejudice, in this context, is demonstrated when the defendant shows a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Holland v. State*, 761 S.W.2d at 314, *Wilkerson v. State*, 726 S.W.2d at 548 n. 3. Whether a defendant has received effective assistance of counsel is to be judged by the totality of the representation, not isolated acts or omissions of trial counsel. *Wilkerson v. State*, 726 S.W.2d at 548.

■■■ Appellant's claim that trial counsel was ineffective because of his failure to allow appellant to testify on his own behalf is without merit. This could very well have been trial strategy. Appellant gave conflicting statements regarding his whereabouts on the night of the shootings, and he surely would have been subject to vigorous cross-examination on this crucial issue. Further, the inconsistencies in his statements could be explained by other witnesses, particularly Ramirez. Additionally, trial counsel's affidavit states that the defendant concurred in this strategic choice and no evidence was presented to the contrary.

■■■ We likewise reject appellant's claim that trial counsel had a conflict of interest. The week before trial, trial counsel became aware that he represented the victim's father on other unrelated criminal matters. Trial counsel revealed his potential conflict and defendant stated on the record that he had been informed and still wanted the same trial counsel. Appellant cannot now complain of this matter.

■■■ Appellant complains of trial counsel's failure to request an instruction at the guilt-innocence phase informing the jury that appellant's failure to testify was not to be considered in determining guilt. We note that such an instruction was requested and given at the punishment phase. The decision not to seek such an instruction at the guilt/innocence phase could have been trial strategy, for the instruction would have drawn the jury's attention to appellant's silence. No improper comments were made at this stage, and trial counsel's response when comments were made at the punishment phase illustrates that he was diligent in protecting appellant's rights.

■■■ Appellant complains that counsel did not object to the impeachment of defense witness John Orta regarding a prior marihuana possession conviction. A witness can be impeached with a prior conviction if the crime was a felony or if it involved moral turpitude. TEX.R.CRIM.EVID. 609(a). The record does not disclose whether Orta's conviction involved a felony or misdemeanor offense. Appellant has thus failed to meet his

burden of establishing ineffective assistance of counsel. Even if the conviction were for a misdemeanor offense, we cannot say that the failure to object was anything other than a trial strategy to avoid over-emphasis of the conviction. *See Ybarra v. State,* 890 S.W.2d 98, 113 (Tex.App.—San Antonio 1994, pet. ref'd) (failure to object to improper impeachment may be strategic choice).

■■■ Appellant's final complaint regarding ineffective assistance of counsel concerns the failure to object to improper prosecutorial jury argument. During closing argument at the guilt/innocence phase the prosecutor tried to explain why Priscilla Jimenez lied about her boyfriend's gang association by interjecting her own views:

> I think what really happened is that she believed that if you as jurors had any idea that she was affiliated with a gang person, a gang member in any respect, that Defendant would get away with murder. So rather than—rather than risk him getting away with murder, she tries to make you believe that there was no gang affiliation. . . . The fact that she would deny any gang affiliation by her boyfriend does not make her unbelievable.

It was improper for the prosecutor to convey her own beliefs about the facts. There is a danger that the jury might infer that counsel's beliefs are based upon some outside facts or knowledge. *Wyatt v. State,* 566 S.W.2d 597, 604 (Tex.Crim.App.1978).

■■■ The prosecutor also injected facts which were not in evidence:

> They know neighbors are not going to come and say, "I know who did it." They are scared. Witnesses are scared to come forward. . . . *We know we have them driving. Roland sees them together. Detective Gonzales told you Roland identified him too.* (emphasis added).

Detective Gonzales never testified to this and Roland's statements were successfully excluded on a hearsay objection. The State is not allowed to refer in final argument to evidence that has not been admitted. *Campbell v. State,* 610 S.W.2d 754, 757 (Tex.Crim. App.1980).

A review of the totality of trial counsel's representation reveals that counsel's failure to object to these two isolated comments was not prejudicial to appellant. Our review shows that counsel engaged in extensive pretrial investigation and case development, obtained a severance from trial with co-defendant Jesse Del Rio, thoroughly voir dired the jury panel and struck some panel members for cause, fully participated in cross-examination of witnesses, called witnesses on appellant's behalf, and successfully preserved error on improper argument at the punishment phase. Appellant is not entitled to error free representation. *See Ingham v. State,* 679 S.W.2d 503, 509 (Tex.Crim.App.1984). In this case, appellant received diligent and effective representation. Point of error three is overruled.

## CONCLUSION

We reject appellant's challenges to the sufficiency of the evidence, the adequacy of trial counsel's representation, and the propriety of the State's closing argument at the guilt/innocence phase of trial. We agree that reversible error was committed by the State during closing argument at the punishment stage. Accordingly, the conviction of guilt is affirmed, and the cause is remanded to the trial court to conduct a new punishment hearing pursuant to TEX.CODE CRIM.PROC. ANN. art. 44.29(b) (Vernon Supp.1996).

DUNCAN, Justice, dissenting.

I concur in the majority's judgment insofar as it affirms De Los Santos' conviction. I respectfully dissent, however, from the majority's reversal of the trial court's judgment on punishment.

### THE PROSECUTOR'S CLOSING ARGUMENT

During closing arguments, De Los Santos' counsel made a plea for probation and, near the end of his argument, stated:

> Defense Counsel: I think each person has some value in them and each person gives something in this life. In this situation Lucio Delossantos [sic], you know, has not shown to be an evil individual person, not to be shown a horrible

person. He committed a horrible act as you have found.

It was thus in response to De Los Santos' closing argument that the prosecutor asked:

> Prosecutor: Not evil? Not horrible? What does a person have to do to be evil and horrible? Kill not only Maria How, but that three month old baby.... He is evil. He is horrible.

The prosecutor then went on to review the evidence and, in response to De Los Santos' plea for a "break", *i.e.*, probation, stated:

> Prosecutor: He already got his break. He only killed one person. What does he do after that? They go back to the party to party, to brag about it with the rest of them, Jesse and Steve and Goofy and whatever their names are. But they do take Jesse to the hospital. "Oh, yes, let's take Jesse."
>
> What about the five people that are there left dying? Any remorse for them? Do we ever hear an "I am sorry. Let me see what I can do. Let me help you"?

At this point, De Los Santos objected. The trial judge sustained the objection and instructed the jury to disregard the prosecutor's last statement, but he denied De Los Santos' motion for a mistrial. The prosecutor continued:

> Prosecutor: Did the Defendant ever stop and say, "Oh, my God. I didn't mean to do all of this. I am sorry, Roland. I am sorry, Priscilla."
>
> Defense Counsel: Your Honor—
>
> Prosecutor: He left the scene.

Again, De Los Santos objected and again the trial court sustained the objection and instructed the jury to disregard the prosecutor's last statement. The prosecutor continued:

> Prosecutor: Ladies and gentlemen, referring to the night of August 8th, 1993, what else does he do? After he makes sure his friend is treated, he sleeps. This evil, horrible person can sleep. He

shot four people, he killed a person, and he can sleep.

Finally, the prosecutor stated:

> Prosecutor: We need to send these messages. Yesterday's message was strong and we must continue to send these messages because there is a lot of people out there that are hearing about what you are going to do.
>
> A life for a life. Rehabilitation? Has he shown any remorse?

Once again, De Los Santos' objection was sustained, and the jury was instructed to disregard the prosecutor's last statement.

### IMPROPER COMMENTS ON THE FAILURE TO TESTIFY

The Court of Criminal Appeals recently reaffirmed the test for whether closing argument violates a defendant's right to remain silent:

> To violate appellant's constitutional and statutory rights, the language, viewed from the jury's perspective, "must be manifestly intended or of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify..... A mere indirect or implied illusion to the accused's failure to testify does not violate appellant's rights. A remark that calls attention to the absence of evidence which only the defendant could supply will result in reversal; however, if the language can reasonably be construed to refer to appellant's failure to produce evidence other than his own testimony, the comment is not improper.

*Patrick v. State,* 906 S.W.2d 481, 490–91 (Tex.Crim.App.1995). In my view, the prosecutor's argument in this case passes this test for two reasons.

First, the prosecutor's argument in this case, when read in context, plainly refers not to De Los Santos' failure to testify at trial but to his failure to express remorse to anyone immediately after the shootings.[1] *See*

---

1. The prosecutor's comments concerning De Los Santos' lack of remorse would appear to have been based upon the following excerpts from the guilt/innocence phase of the trial. In the first excerpt, De Los Santos was walking with one of the State's witnesses when Jesse Del Rio pulled up alongside them in a car.

*Moore v. State*, 822 S.W.2d 355, 357–59 (Tex. App.—Houston [1st Dist.] 1992), *pet. ref'd*, 849 S.W.2d 350 (Tex.Crim.App.1993); *see also Davis v. State*, 782 S.W.2d 211, 222–23 (Tex.Crim.App.1989), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990). And there were at least two groups of people who could have so testified—De Los Santos' victims and his punishment phase witnesses. Under these circumstances, the prosecutor's argument can reasonably be construed as a comment not on De Los Santos' failure to testify, but as a comment on the failure of other witnesses to testify that De Los Santos had expressed feelings of remorse outside of the courtroom. Accordingly, in my view, the resolution of this issue is not controlled by *Swallow v. State*, 829 S.W.2d 223, 225 (Tex. Crim.App.1992),[2] but by *McMahon v. State*, 582 S.W.2d 786, 791–92 (Tex.Crim.App.1978), *cert. denied*, 444 U.S. 919, 100 S.Ct. 238, 62 L.Ed.2d 175 (1979).

In *McMahon*, the court held that the prosecutor did not improperly comment on the defendant's failure to testify when he asked the jury: "Have you seen any remorse? Have you seen any remorse on the part of the defendants?" The basis for the court's

> By the Witness: ... So [De Los Santos] told one of the guys, ..., "this is that chick that you killed, right, boyfriend.... That chick that you killed, this is her sister's boyfriend." ... And [Del Rio] goes—you know, he told me, he told me face-to-face, he goes, "Well I am sorry, you know. I didn't know I shot her."
>
> De Los Santos remained silent.
>
> In the second excerpt, the State's witness was testifying as to the people De Los Santos mentioned were involved in the shooting.
>
> By the Witness: ... I have heard—I heard the story from [De Los Santos] but, you know, from everybody else too.
> By the State: Because everybody else was bragging about it, right?
> By the Witness: I guess.
> By the State: The L.A. Boys were bragging about having killed a 21 year old female, right?
> By the Witness: Yes.
>
> The court sustained a hearsay objection to the testimony and instructed the jury to disregard the prosecutor's question.
>
> As the above excerpts demonstrate, the prosecutor's closing argument regarding remorse can reasonably be construed as referring to De Los Santos' lack of remorse shortly after the shooting, not his failure to testify at trial. And while

holding was that the defendants "were not the only individuals in a position to testify to the presence or absence of remorseful feelings on their part. Twenty-one reputation or character witnesses were called by the defense." *Id.* at 792. Accordingly, "the prosecutor's argument ... could reasonably have been construed not to be a reference to the appellants' failure to testify but to their failure to show through other witnesses any remorse for their role in the commission of the murder." *Id.; see also Elkins v. State*, 647 S.W.2d 663, 667 n. 7 (Tex.Crim.App.1983) (noting that court construed prosecutor's argument in *McMahon* as permissible indirect comment); *cf. Thomas v. State*, 638 S.W.2d 481 (Tex.Crim.App.1982) (closing argument referring to failure of defendant's witnesses to testify regarding defendant's remorse held not to be comment on defendant's failure to testify).

So it is here. Several of De Los Santos' victims testified and, if De Los Santos had expressed remorse to them or those they knew immediately following the shootings, they could have so testified. They were not asked this question and did not otherwise testify as to the remorse issue. Similarly,

> the argument could not legitimately refer to the excluded hearsay testimony quoted above, there was no trial objection, and there is no appellate complaint, that the argument was being outside the record.
>
> 2. In my view, *Swallow* is distinguishable from this case because there the defendant testified during the guilt/innocence phase of the trial, denied the charge of driving while intoxicated, and instead claimed he merely appeared intoxicated because of some cold medication he had taken immediately before entering his car. "This testimony was necessarily inconsistent with either an expression of remorse or an admission of guilt." *Swallow*, 829 S.W.2d at 224–25. The jury found the defendant guilty. During the punishment phase, the defendant did not testify but his attorney argued for probation because this "was as minor a DWI as you're going to have," in part because "the [cold] medication was at least a causative factor in appellant's arrest." *Id.* at 225. In this context, the court held that the prosecutor's argument "necessarily called the jury's attention to the fact that, once it had rejected his testimony at the guilt phase, appellant failed to take the stand at punishment and provide that testimony which would have been antithetical to his posture at the guilt stage...." *Id.* at 226.

both De Los Santos' father, with whom De Los Santos lived, and De Los Santos' sister, with whom De Los Santos corresponded, testified on De Los Santos' behalf at the punishment phase of the trial. Either could have testified to feelings of remorse expressed by De Los Santos pursuant to Rule 803(3) of the Texas Rules of Criminal Procedure.[3] Neither did.

In short, the prosecutor's arguments can reasonably be construed as comments on the failure of witnesses other than De Los Santos to testify regarding any remorseful feelings expressed by him prior to trial. Under the authority of the test most recently enunciated in *Patrick* and applied in *McMahon*, I would overrule De Los Santos' second point of error and affirm the judgment in its entirety.

---

**3.** I recognize that the *Swallow* Court stated that contrition evidence, when "offered by witnesses other than the accused himself, is inadmissible." *Swallow*, 829 S.W.2d at 225 (citing *Thomas v. State*, 638 S.W.2d 481 (Tex.Crim.App.1982)). However, *Thomas* and other cases holding similarly were decided before the 1986 enactment of the Texas Rules of Criminal Evidence and, in particular, Rule 803(3), which permits the introduction of hearsay testimony regarding a declarant's state of mind. *Compare, e.g., DeRusse v. State*, 579 S.W.2d 224, 233 (Tex.Crim.App.1979) (self-serving hearsay of no probative value even though admitted without objection) *with* Tex. R.Crim.Evid. 803(3).