Alberto **ARRIAGA**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–98–00577–CR.

Court of Appeals of Texas,
San Antonio.

Aug. 11, 1999.

Jimmy Parks, Phillips & Parks, San Antonio, for appellant.

Mary Beth Welsh, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, PAUL W. GREEN, Justice.

## OPINION

Opinion by: ALMA L. LÓPEZ, Justice.

This is an appeal from a jury verdict finding appellant, Alberto Arriaga, guilty of tampering with or fabricating evidence. *See generally* TEX. PENAL CODE ANN. § 37. 09(a)(2). The trial court entered judgment and sentenced appellant to two years of community supervision. On appeal, appellant challenges the legal and factual sufficiency of the evidence. We affirm the trial court's judgment.

### THE ACCIDENT INVESTIGATION

On December 30, 1995, between 8:30 and 9:00 a.m., Alberto Arriaga, a patrol officer with the San Antonio Police Department, was called to the scene of a two-car accident at the intersection of Silent Sunrise and Tezel Road. A stop sign and a median separate the lanes of traffic. The drivers involved in the accident were Katherine Wansley and Nanette Ramirez. Wansley's son, a passenger in her car, was taken from the scene of the accident by his fa-

ther in order to arrive on time for a school function. Ramirez, age 16, was on her way to work when the accident occurred. There were no other witnesses to the accident.

Wansley told Arriaga that she was making a left turn from Silent Sunrise onto Tezel Road when Ramirez's vehicle, traveling south on Tezel, struck Wansley's vehicle in the rear. The damage to Wansley's vehicle was in the center of her bumper. The parties disagreed on the events leading up to the accident. There were no skid marks, debris, or other physical evidence at the scene of the accident, nor were there physical injuries as a result of the accident. Both vehicles were operable after the collision.

To avoid impeding traffic, both drivers moved their cars from the point of collision to the right side of the road. They then walked to a nearby convenience store and made telephone calls. Wansley telephoned the police to report the accident. Ramirez called her employer and then her mother, Deborah Mai Ramirez.

Deborah Ramirez subsequently called Nanette's father, Steve Ramirez, an officer with the San Antonio Police Department, who then drove to the scene of the accident. Steve Ramirez was off-duty the morning of the accident. He picked up his daughter from the convenience store and drove back to the scene of the accident arriving before appellant. Appellant arrived at the scene of the accident next and, after investigating, wrote the police report regarding the traffic accident. The police report designated Wansley's car as vehicle number one, and Ramirez's car as vehicle number two.

Appellant approached Wansley first, asking for her account of the accident and for her driver's license and proof of insurance. Wansley described where her vehicle was at the time of impact. The officer then spoke to Nanette Ramirez. He requested and received her driver's license and proof of insurance. The card listed Deborah Mai Ramirez, Nanette's mother,

as the insured. According to Wansley, Steve Ramirez shook hands with and spoke to appellant. Wansley thought that Steve Ramirez was either friends with appellant, or perhaps a police officer himself. Nanette Ramirez testified that appellant and her father were neither friends nor social acquaintances.

Insurance forms were exchanged between Ramirez and Wansley. Wansley testified that Ramirez filled out her form while standing next to her father. When Wansley received the insurance report she noticed that Nanette Ramirez's form stated that Deborah M. Ramirez was the driver of vehicle number two. The form was in Nanette's handwriting.

A third policeman, Officer Davis, arrived at the scene of the accident after the appellant. He spoke to appellant for a few minutes, and then approached Nanette's father and shook his hand. At this time, Wansley came to the conclusion that Steve Ramirez was probably a police officer. Officer Davis spoke to the father for a few minutes and then left the scene of the accident without further action. However, after the investigation was complete, appellant met with Officer Davis later that morning. Officer Davis testified that appellant lamented that the case was "messed up" because a fellow officer's daughter was involved. Appellant also told Davis that Nanette Ramirez was not the party at fault in the accident. After the accident, Deborah Ramirez gave a recorded statement to her insurance company stating that she was in fact the driver of vehicle number two at the time of the accident.

On the police report, appellant had drawn the accident in a manner that illustrated and purported that Wansley pulled out into the intersection at the point of collision. However, according to statements made to appellant by both Wansley and Nanette Ramirez, this was not how the accident had occurred. Wansley was unaware of how the officer had received

this information. After disputing her insurance company's assessment of fault, Wansley obtained a copy of the police report and noticed that the age of the other driver was listed as 36 years old, whereas Nanette, the actual driver of the vehicle, was only 16 years old.

Wansley contacted Internal Affairs of the San Antonio Police Department and was referred to Sergeant Rabe. Wansley spoke to Sergeant Rabe, and then directly with appellant himself about the errors in the report. Appellant informed Wansley that he would check his records and review the situation. Wansley spoke with appellant again at which time he informed her that he was reviewing his records, but was impeded in his review due to the unusually high number of automobile accidents that had occurred the day of Wansley's accident. According to Wansley, this second conversation occurred about a week after the initial conversation. Wansley spoke with appellant a third time and he told her that he would have to check with the other party to the accident before he could change his records. Once this step was completed, she was told that she would receive a revised report. When nothing further happened, Wansley contacted Sergeant Ewell of the Internal Affairs Division of the San Antonio Police Department, who conducted an investigation as to the police report in question. Once an investigation was initiated, appellant amended the report.

At the close of evidence, appellant moved for a directed verdict of acquittal based upon the State's failure to prove the fundamental elements of the indictment. The Court denied the motion, the jury found him guilty, and the trial court sentenced appellant to two years of community supervision.

### Legal and Factual Sufficiency

Appellant is challenging the legal and factual sufficiency of his conviction. Specifically, appellant asserts that the facts and circumstances with which the State proved appellant's guilt can be explained by a reasonable alternative hypothesis. Appellant contends that there is ample evidence which supports the hypothesis that his actions were either a simple mistake, or that he was deliberately misled at the scene of the accident by Ramirez's father; and, that when a reasonable hypothesis exists, other than the guilt of the accused, then guilt beyond a reasonable doubt has not been established. *See Mares v. State*, 801 S.W.2d 121 (Tex. App.—San Antonio 1990); *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App.1988).

In reviewing the legal sufficiency of the evidence to support the conviction, the Court must view all of the evidence, direct or circumstantial, in the light most favorable to the verdict in order to ascertain if any rational trier of fact could have, within the body of evidence, found the defendant guilty beyond a reasonable doubt of the essential elements of the crime. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Williams v. State*, 937 S.W.2d 479, 482–83 (Tex.Crim. App.1996). Under this standard, the jury is the exclusive judge of the credibility of the evidence and witnesses. *See McFarland v. State*, 928 S.W.2d 482, 496 (Tex. Crim.App.1996). The standard is the same for both direct and circumstantial evidence cases. *See Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App.1993).

In reviewing the factual sufficiency of the evidence, the Court must view all of the evidence without regard to whether the evidence is favorable to either the State or the appellant. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). Evidence is to be weighed equally by the Court with deference to the fact finder's determination. *See id.* at 133. Verdicts are set aside only if they are so contrary to the overwhelming weight of the evidence as to be manifestly wrong and unjust. *See id.* at 135. While the Court reviews all of the evidence presented by both sides, we are required to show appropriate deference to the jury, so as to avoid

supplanting our own judgment for the judgment of the trier of fact. *See De Los Santos v. State,* 918 S.W.2d 565, 569 (Tex. App.—San Antonio 1996, no pet.). Conflicts in witness testimony are left to the discretion of the jury. *See id.* In Texas, an individual commits the offense of tampering with or fabricating physical evidence when said individual, "makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent to affect the course or outcome of the investigation or official proceeding." TEX. PENAL CODE ANN. § 37.09(a)(2) (Vernon 1994 & Supp.1999). In this instant case, appellant was indicted for intentionally, with knowledge of its falsity, making a record or document, namely, a police officer's accident report filed by appellant, in which he wrote the name, Deborah Mai Ramirez, as the driver of vehicle number two, with the intent to affect the outcome of the investigation of said traffic accident.

At trial, Ramirez testified that a green vehicle pulled out in front of her and put on its brakes. Suddenly having to brake, she slid into the back of Wansley's vehicle. She further testified that she spoke to appellant, the officer in charge of the investigation, and informed him that she was the driver of the vehicle. To her knowledge, he understood that this was indeed the case, as she had given him her driver's license and proof of insurance. Ramirez stated that appellant kept the documents long enough to take down the information, and that she was able to see that he was writing, but not what he was writing.

Ramirez testified that she put her mother's name on the form instead of her own name because she misunderstood the nature of the question. Ramirez testified that her mother never came to the scene of the accident, nor did her father help her fill out the form, although on cross—examination she conceded that her father was trying to protect her. Ramirez also testified on cross—examination that she told appellant her account of how the accident occurred, including the fact that it occurred past the intersection, and not in the intersection. She testified that her father never informed her about a plan to list her mother on the report as the driver of vehicle number two, but she became aware of this fact when her father was later dismissed from the San Antonio Police Department.

Appellant was assigned to investigate the traffic accident wherein the course of appellant's actions took place. The information that appellant received directly from Nanette Ramirez and her drivers license established that she was indeed the driver of vehicle number two. However, appellant also looked up Deborah Mai Ramirez's name on the MDT[1] unit in his patrol car. This search supplied him with information from Deborah Ramirez's driver's license which appellant then put on his accident report. The evidence supports the finding that appellant did intentionally and knowingly make a false police report by falsely writing Deborah Mai Ramirez's name as the driver of vehicle number two.

Appellant contends that there was no intent to affect the outcome of the investigation because, under the Ramirez's automobile insurance policy, Nanette, an unlisted driver, would have been covered regardless of her unlisted status. There is no evidence, however, to show that appellant was aware of this fact. An adjuster for one of the insurance companies testified that only people directly involved in the insurance industry itself would normally be aware of this fact. The record establishes that adjustors of both insurance companies relied on the police report filed by appellant in assessing party liability. The false information contained in the report, therefore, affected the outcome of the investigation. View-

---

**1.** MDT is short for Mobile Data Terminal. It is a small portable computer that is located in the vehicles of patrol officers. In the course of an officer's duties it may be used to procure criminal and background information regarding specific individuals.

ing all of the evidence in the light most favorable to the verdict, we find that the record contains sufficient evidence to support the jury's verdict finding appellant guilty of the offense of tampering with or fabricating physical evidence. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Likewise, in spite of appellant's contention that a reasonable hypothesis could explain his actions, namely, that he was either mistaken or deliberately misled by Nanette's father, we nevertheless find that a rational jury could have found, within the body of evidence, and beyond a reasonable doubt, all of the essential elements of the offense with which appellant is charged. *See Clewis v. State,* 922 S.W.2d 126, 129. Officer Davis, who had been on the force for the same period of time as appellant, testified that, in the course of his career, he has occasionally felt pressured by a senior officer to falsify a report, but that he refused to do so because he was aware both intuitively and procedurally that such an act would be against police procedure. It is also wrong because it tends to undermine the public's confidence in its police force. It tarnishes the reputation for honor, courage, and professionalism that the overwhelming majority of officers risk their lives to uphold on a daily basis.

In matters of legal sufficiency, the jury is the exclusive judge of the credibility of the witnesses. *See McFarland v. State,* 928 S.W.2d 482, 496. In the instant case, the jury weighed the evidence against the appellant. And, while the Court reviews all of the evidence presented by both sides, we are required to show appropriate deference to the jury. *See De Los Santos v. State,* 918 S.W.2d 565, 569. We do not find the verdict of the trial court so contrary to the overwhelming weight of the evidence as to be manifestly wrong and unjust. The evidence is factually sufficient to support appellant's conviction. Accordingly, both appellant's points of error are overruled, and the judgment of the trial court is affirmed.