**Joseph Thomas SIEGEL Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–89–952–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 6, 1991.

Rehearing Overruled Sept. 12, 1991.

John D. Wooddell, Houston, for appellant.

Kelly McClendon, Angleton, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and CANNON, JJ.

OPINION

CANNON, Justice.

Appellant entered a plea of not guilty before a jury to the offense of aggravated assault of a police officer. TEX.PENAL CODE ANN. § 22.02(a)(2). He was convicted and the jury found that appellant used a deadly weapon, namely a firearm, during the commission of the offense. The court assessed punishment at imprisonment for seven years. Appellant brings twelve points of error. We affirm.

On October 23, 1988, at 1:45 a.m., Deputy George Caldwell and Lieutenant Carl Griggs of the Brazoria County Sheriff's Dept. received a call concerning a disturbance on County Road 220 behind the Bayou Tennis Club. The officers drove to County Road 220 in two patrol cars. On the way, they were flagged down by two women. The women told the officers that they heard some shouting and screaming farther down the road. The officers drove down the road until they were approached by appellant's daughter. The girl was visibly upset and told the officers that her father was "out of control, mad, and causing a disturbance." She pointed in the direction of appellant's house. The officers also encountered a neighbor's son, who related the same information. As the officers approached appellant's house, they met appellant's older daughter, who advised them that appellant was intoxicated and violent. Appellant's son-in-law also approached the officers, shouting at them to call an ambulance because a woman inside the house was having a heart attack.

The officers radioed for an ambulance and pulled their patrol cars onto the end of the driveway to appellant's house, near the street. The driveway is somewhere between 60 and 100 feet long and curves left to the garage. At the end of the driveway, next to the garage, is the mobile home of appellant's son-in-law. Deputy Caldwell pulled his patrol car in first and Lieutenant Griggs followed in his patrol car. Both cars had their headlights turned on. Appellant was standing in front of his garage, by a pickup truck. Appellant saw the officers and went in the house through the garage. The officers started to make their way toward the garage when appellant came out the front door of the house and walked toward the officers. The officers shined their flashlights on appellant and observed him carrying a blue steel handgun. The officers took cover behind the lead patrol car. Lieutenant Griggs took up a position on the left rear fender of the lead patrol car and Deputy Caldwell positioned himself behind the right front fender. They identified themselves as police officers and warned appellant to "drop the gun." Appellant continued to advance, pointing the weapon toward the officers. The officers repeated the warning to "drop the gun" several times. As appellant advanced, Deputy Caldwell heard him say, "I will kill you." When appellant approached near the lead patrol car, Lieutenant Griggs fired four shots. Two shots hit the mobile home at the end of the driveway. Appellant was hit by the other two shots, wounding him in the stomach and nearly removing a finger on his right hand. Appellant's single action revolver was shot out of his hand, breaking the grips of the gun. Appellant fell to the ground and family members rushed to his aid. He struggled unsuccessfully to get to his feet, refusing to let the officers near him. Shortly thereafter, emergency medical personnel arrived and took appellant to the hospital.

In his first point of error, appellant contends the trial court erred by failing to ensure that a hearing on pre-trial motions was transcribed by the court reporter. The record reflects that appellant did not request a court reporter to transcribe the hearing and that no transcription was made. If appellant does not request a court reporter to record proceedings, and no record is made, he cannot complain of such fact on appeal. *Emery v. State,* 800 S.W.2d 530, 535 (Tex.Crim.App.1990). We overrule appellant's first point of error.

In points two through four, appellant contends the trial court erred by admitting certain evidence in violation of orders granting appellant's pre-trial motions. Appellant argues that the court granted his discovery motion and then did not enforce

its order when it admitted certain evidence before appellant could conduct an inspection of that evidence.[1]

■ A defendant in a criminal case does not have a general right to discovery of evidence in the State's possession. *Quinones v. State*, 592 S.W.2d 933, 940 (Tex. Crim.App.), *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980). A defendant's right to discovery is limited to exculpatory or mitigating evidence. *Dickens v. Court of Appeals for the Second Supreme Judicial District of Texas*, 727 S.W.2d 542, 551 (Tex.Crim.App.1987). Beyond that, the scope of discovery is within the trial court's discretion. *Quinones*, 592 S.W.2d at 940; TEX.CODE CRIM.PROC.ANN. art. 39.14 (Vernon 1979). It is not clear from the record whether appellant in fact obtained a ruling on his discovery motion. The court, however, granted appellant's motion in limine. Item 3 of that motion excludes "any item not previously tendered to Defendant's counsel for examination, pursuant to the Court's ruling that Defendant would be entitled to full discovery under the law ..." Nevertheless, appellant waived error when he failed to object when the items complained of were offered in evidence. TEX.R.APP.P. 52(a). The granting of a motion in limine will not preserve error. *Gonzales v. State*, 685 S.W.2d 47, 50 (Tex.Crim.App.1985). For error to be preserved with regard to the subject matter of a motion in limine, it is absolutely necessary that an objection be made at the time when the subject is raised during trial. *Id.*

■ Appellant argues that the State suppressed exculpatory and impeachment evidence prior to trial. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Appellant asserts that had he been allowed access to his gun and ammunition, an inspection by a ballistics expert would have shown that the gun was not loaded with live shells and that appellant was not pointing the gun toward the officers, but toward the sky. Without this evidence prior to trial, appellant contends he was unable to impeach Sergeant Roberts' testimony that appellant's gun contained one live shell underneath the hammer and that the hammer was cocked.[2] Appellant concludes that the trial court should have excluded the gun and that failure to do so was reversible error, citing *Saunders v. State*, 572 S.W.2d 944 (Tex.Crim.App.1978).

■ The holding in *Brady*, requires disclosure only of evidence that is both favorable to the accused and material either to guilt or to punishment. *Bagley*, 473 U.S. at 674, 105 S.Ct. at 3379 (citing *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–1197). In order to invoke the *Brady* doctrine, the accused must present evidence that: (1) the prosecution suppressed or withheld evidence; (2) this evidence would have been favorable to the accused; and, (3) this evidence would have been material to the accused's defense. *Moore v. Illinois*, 408 U.S. 786, 794–795, 92 S.Ct. 2562, 2567–2568, 33 L.Ed.2d 706 (1972); *Mullen v. State*, 722 S.W.2d 808, 815 (Tex.App.—Houston [14th Dist.] 1987, no pet.). While the admission of previously undisclosed, exculpatory evidence is reversible error, the case cited by appellant for that proposition is not applicable because it dealt with the admission of the defendant's pistol to prove the circumstances surrounding her arrest. *Bagley*, 473 U.S. at 675–676, 105 S.Ct. at 3379–3380; *Saunders*, 572 S.W.2d at 953–954.

Appellant's *Brady* motion asked for "all exculpatory evidence of which the prosecution is aware or which it has in its possession ... including any evidence which con-

---

1. Appellant complains that he was denied discovery of his weapon and ammunition, Lieutenant Griggs' weapon and ammunition, and photographs of the scene. According to appellant, these items were improperly admitted in evidence. Appellant introduced Lieutenant Griggs' weapon and ammunition and, therefore, he cannot now complain of the admission of that evidence.

2. Sergeant Pat Roberts worked for the Identification Division of the Brazoria County Sheriff's Dept. and took photographs and measurements of the scene shortly after the incident. He testified that he recovered appellant's weapon and found it contained a total of six shells, including the one live shell and five discharged shells.

tradicts or may contradict the prosecution's prospective testimony." There is nothing in the record to suggest that the State withheld evidence. To the contrary, appellant's counsel emphasized that the prosecutor was cooperative. The prosecutor said that he received the physical evidence (including appellant's weapon and ammunition) only a week before trial; that no ballistics tests or lab studies were conducted on the evidence; and that appellant's counsel was free to examine the evidence. The prosecutor noted that his file was open up to the time of trial. In addition, appellant does not show how this evidence was favorable or material. Appellant merely concludes that a ballistics test on the gun would have shown that it was not loaded with live shells and that he did not aim it at the officers. There is nothing in the record to support these assertions. Appellant does not say how an inspection by a ballistics expert would have shown the direction in which appellant pointed the gun. Appellant also does not say how such an inspection would have enhanced his ability to impeach Sergeant Roberts' testimony, especially in light of appellant's own testimony that he checked the gun immediately before confronting the officers and determined that it did not contain live shells. Appellant fails to show that he was denied discovery of exculpatory or impeachment evidence prior to trial. We overrule points two through four.

■ In his fifth point of error, appellant contends the prosecutor committed misconduct during jury argument when he referred to appellant's weapon as a "killing machine." Appellant refers to the following remark:

> Prosecutor: ... So a bullet went into the mobile home in the backyard. Okay. I don't know what would have happened if these two bullets hadn't missed and would have hit the Defendant. But as to the elements of this offense, I can't see where it is, other than happening at the same time, tends to show that this defendant is not guilty. These are the shattered grips of this *killing machine.* As for the evidence, take it back and look it over. Look at these pictures. Ask yourselves, does it make sense? I believe it doesn't. (Emphasis added).

■ Appellant did not object to this portion of the State's argument. To preserve error committed during jury argument, the defendant must object until receiving an adverse ruling. *Harris v. State*, 784 S.W.2d 5, 12 (Tex.Crim.App.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990); Tex.R.App.P. 52(a). An exception to the above rule exists when jury argument is so prejudicial that an instruction to disregard the argument would not cure the harm. 784 S.W.2d at 12. In that instance, neither a timely objection nor an adverse ruling is required to preserve error for review. *Id.* (citing *Motley v. State*, 773 S.W.2d 283, 293 (Tex.Crim. App.1989)).

In the instant case, the prosecutor's remark, when viewed in context, was not so prejudicial that an instruction to disregard would not have cured the harm. *See Drew v. State*, 743 S.W.2d 207, 220 (Tex.Crim. App.1987). Moreover, we find no justification for appellant's complaint, considering that appellant's counsel later used the prosecutor's remark to his advantage.[3] We overrule appellant's fifth point of error.

■ In his sixth point of error, appellant contends the trial court erred by failing to grant his motion for instructed verdict. Since a challenge to a trial judge's ruling on a motion for instructed verdict is in actuality a challenge to the sufficiency of the evidence, we review this point with appellant's tenth point, also challenging the sufficiency of evidence. *Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App.1990). In reviewing the sufficiency of the evidence, the test is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*

---

**3.** During his closing argument, counsel for appellant referred to the prosecutor's remark as "uncalled for" and told the jury that it was "deliberately made to inflame [their] minds." He also "instructed" the jury "to subtract" from such an "inflammatory comment."

*v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim. App.1989).

According to appellant's testimony, he was in the backyard of his house when he saw headlights in the driveway. Not sure whether it was relatives or neighbors, appellant went in the house to get his gun. He testified that the hammer on the gun was not cocked and that the gun contained spent shells and possibly one misfired shell. Appellant came out of the front door and headed toward his pickup truck, which was parked in the driveway immediately in front of the garage. Appellant testified that he carried his gun high in the air where it was plainly visible. He also testified that he did not hear the officers identify themselves and that he was blinded by the headlights and did not see the patrol cars.

According to the testimony of both Deputy Caldwell and Lieutenant Griggs, appellant came out the front door and advanced towards them. Both testified that appellant pointed a gun at them and that they told appellant numerous times "to drop the gun." Both officers testified they were scared. Deputy Caldwell testified that he identified himself and Lieutenant Griggs as police officers. He testified that he overheard appellant verbally threaten them. He also testified that immediately after the shooting he observed appellant's gun with the hammer cocked. This was corroborated by Sergeant Roberts' testimony. Sergeant Roberts further testified that appellant's gun was loaded with one live shell and five discharged shells.

Appellant argues that the physical evidence supports only appellant's version of the incident and contradicts the officers' story that appellant approached them "directly from the front porch." According to appellant, the two stray bullets from Lieutenant Griggs' gun should have hit the front door of appellant's house. Instead, he points out that the stray bullets hit the mobile home at the end of the driveway. Although appellant moved to supplement the record with trial exhibits, we are with-

out the benefit of the diagrams indicating the path taken by appellant. TEX.R.APP.P. 50(d). Nonetheless, Deputy Caldwell testified that appellant did not take a "straight path" but "made a curve" toward them. Lieutenant Griggs also testified that appellant walked half-way down the sidewalk before he advanced toward the officers. The sidewalk curves from the front porch to the right, parallel to the house and toward the driveway. Appellant also points out that the angle of his stomach wound is consistent with his turning to go to his truck. Appellant notes that a bullet passed through him side to side, entering his right front stomach and exiting his left front stomach. Appellant did not offer expert testimony regarding the trajectory of the shots fired by Griggs or the angle of appellant's wound. In addition, Lieutenant Griggs testified that appellant may not have been facing him directly when he fired his weapon. Griggs indicated that appellant alternated the aim of his weapon between himself and Caldwell.

This Court is not to position itself as thirteenth juror in assessing the evidence. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Crim.App.1988). The jury is in the best position to view the evidence and to judge the credibility of the witnesses. *See Id.* Viewing the evidence in the light most favorable to the verdict, we find there is sufficient evidence to support appellant's conviction. It was not error for the trial court to overrule appellant's motion for instructed verdict. We overrule appellant's sixth and tenth points of error.

In his seventh point of error, appellant contends the trial court erred by overruling his motion for new trial. In his motion for new trial, appellant alleges he was denied a fair trial because of jury misconduct, because evidence tending to establish appellant's innocence was intentionally withheld, and because the verdict was contrary to the law and evidence. TEX. R.APP.P. 30(b). Appellant did not attach affidavits to his motion for new trial nor did he present evidence of any kind at the hearing. He simply re-urged arguments made at trial. Motions for new trial are

not self-proving. *Lamb v. State,* 680 S.W.2d 11, 13 (Tex.Crim.App.1984), *cert. denied,* 470 U.S. 1009, 105 S.Ct. 1372, 84 L.Ed.2d 391. They must be supported by affidavits and the affidavits must be offered into evidence. *Id.* Since appellant failed to properly present his motion, it was not error for the trial court to overrule it.

■ In his eighth and ninth points of error, appellant asks this Court to render an acquittal or to remand to the trial court with an order to suppress appellant's weapon. Appellant concludes, without citing authority, that we should take the above action because the tangible physical evidence is now tainted after having been handled by the State, the prosecutor, and the jury. A point of error which is conclusory and cites no authority presents nothing for review. *See MacDonald v. State,* 761 S.W.2d 56, 60 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd) (citing *Brooks v. State,* 642 S.W.2d 791, 797 (Tex.Crim.App.1982). We overrule appellant's eighth and ninth point of error.

■ In his eleventh point of error, appellant contends the trial court erred when the judge commented that "this case may be groundwork for subsequent civil litigation." Prior to trial, the following exchange took place:

The Court: Well do you intend to elicit testimony that the defendant had a weapon on him?

Prosecutor: Yes, sir, I do.

The Court: Do you intend to establish that the officer had a weapon on him at the time the officer fired?

Prosecutor: Yes, sir, I do.

The Court: So the purpose of the weapon whether it was fired or not is to corroborate your officer's story of self-defense, basically; is that correct?

Prosecutor: Yes, sir.

The Court: I mean, I realize he's not on trial but I also realize that this case may be groundwork for subsequent civil litigation.

Prosecutor: Yes, sir, that's correct. And if I might, one other point at the pre-

trial hearing, I did not have this evidence nor was I able to obtain it.

Appellant argues that the comment reflects bias by the trial judge. We disagree. Initially, we note that appellant did not lodge an objection to the trial judge's comment and, thus, failed to preserve error. Tex.R.App.P. 52(a). Even if appellant had objected, the comment was not error. The trial judge did not make the comment in the presence of the venire. In addition, he did not state whether he had knowledge that a civil suit had been filed or would be filed. Furthermore, he did not express an opinion about the merits of such a suit. We overrule appellant's eleventh point of error.

■ In his twelfth point of error, appellant contends that the conduct of the trial denied him due process. As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness that is essential to the very concept of justice. *McMurrin v. State,* 239 S.W.2d 632, 633 (Tex.Crim.App.1951) (citing *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 289–290, 86 L.Ed. 166 (1941)). In order to declare that due process has been denied, we must find that the absence of fairness fatally infected the trial; the acts complained of must be of such quality as necessarily to prevent a fair trial. *Id.* Appellant argues that he was denied due process because he was denied discovery, because he was prohibited from inquiring into the "shooting policy" of the Brazoria County Sheriff's Dept., and because the State "packed" the courtroom with law enforcement personnel to intimidate the jury.

As our previous discussion reflects, appellant was not denied discovery. With regard to the "shooting policy," the following transpired during defense counsel's cross-examination of Deputy Caldwell:

Defense Counsel: What's the shooting policy, the use of deadly force policy, for Brazoria County Sheriff's Office?

Deputy Caldwell: What is the policy?

Prosecutor: I will object. I don't see where that is relevant to this case.

The Court: I will sustain that.

The trial court did not deny appellant the opportunity to inquire about the department's "shooting policy," if one existed. Appellant was free to make an offer of proof or bill of exception to show the substance and relevance of the policy. TEX. R.CRIM.EVID. 103(a)(2); TEX.R.APP.P. 52(b). He did not do so. This was not the fault of the trial court. With regard to the presence of law enforcement personnel in the courtroom, appellant did not invoke "the rule," and then later directed the jury's attention to the presence of the officers. There is no evidence of either improper conduct by the officers or of improper influence on the jury. Appellant was not deprived of due process. Accordingly, we overrule appellant's twelfth point of error and affirm the judgment of the trial court.