No. 04-95-00935-CR



Roger PAEZ, Jr., 


Appellant



v.



THE STATE OF TEXAS,


 Appellee




From the 227th Judicial District Court, Bexar County, Texas 


Trial Court No. 93-CR-3583


Honorable Mike M. Machado, Judge Presiding



Opinion by: Frank Maloney, Justice


Sitting: Phil Hardberger, Chief Justice

 Catherine Stone, Justice

 Frank Maloney, Justice(1)


Delivered and Filed: January 13, 1999


AFFIRMED


 The appellant was charged by indictment with the offense of burglary of a building. The
indictment also charged that appellant had previously been convicted of a felony. The jury found
appellant guilty and at the punishment hearing assessed a term of 50 years incarceration in the
Institutional Division of the Texas Department of Criminal Justice.

 Appellant presents 12 points in his appeal before this Court.


FACTS


 Evidence showed that La Fiesta grocery store on Blanco Road in San Antonio, Bexar County,
Texas was burglarized at approximately 2:00 a.m. on December 6, 1992. Two San Antonio police
officers, Officer Marcus and Officer Mound, arrived simultaneously at the scene of the burglary and
noticed that the back door of the store was open. At that time, two subjects ran out through the open
door; according to Officer Marcus, he got a "thorough look" at one of the individual's face for "three
or four seconds." The appellant was apprehended that same evening some two hours later and was
returned to the store where Officer Marcus identified him as one of the individuals who had exited
the store. At trial both Officers Marcus and Mound identified the appellant as one of the individuals
who they saw exiting the store on that evening. In addition to the testimony of the two officers,
Officer Sanders testified that he apprehended the appellant at approximately 3:30 a.m. that morning;
appellant was hiding in the bushes two or three blocks from the store.

 The appellant did not testify during the guilt/innocence part of the trial, but did testify at the
punishment hearing. During his testimony he said that he was found guilty and must accept the
verdict, but he also indicated that he believed the officers were lying.

POINT I.


 Appellant maintains that the evidence is factually insufficient to establish that he committed
the offense. He states that the record shows that as to the second individual who came out of the
store, who the officers identified after his arrest as appellant, the officers did not give a detailed
description of that second individual prior to appellant's arrest, except to say that he was wearing
dark clothing and was 5'7" and 165 pounds with black hair. A photo made of appellant after his
arrest showed that appellant was wearing dark clothes and a sweat-top with a design on the front,
as well as a plaid shirt. There was no mention by Officer Marcus of the design on the shirt at the
time he gave his description. He maintains that Officer Marcus at trial finally admitted that he saw
only a side view of the clothes and face of the second subject, although Officer Marcus's description
of the first subject was very detailed. In addition, the evidence showed that there were two wrecking
bars and a crowbar found at the scene; but no fingerprints were found on the crowbar or wrecking
bars or found anywhere in the store, despite the fact that the office was ransacked. The testimony
showed that neither subject was wearing gloves and that gloves, socks, or bandanas were not found
at the scene.

 The State maintains that the evidence established that the back of the store was pretty well
lit up and that the officer's car lights also lit up the area. Officer Marcus testified that there was "no
doubt" that the appellant, Roger Paez, Jr. was one of the individuals he saw running out of the back
door. Marcus testified that he temporarily caught appellant at the store, at which time he got a "good
look at appellant again." Officer Mound testified that he also saw the appellant come out the back
door of the store and he "looked straight at" Officer Mound. He further testified that he and Marcus
arrived seconds apart. "We almost arrived simultaneously." Officer Dale Sanders testified that he
apprehended the appellant an hour and one-half after he received the call at 2:00 a.m. Around 3:30
a.m. he found appellant hiding in the bushes two or three blocks from the store. The appellant was
"almost exhausted," "real tired," and "breathing hard."

 In the case of Clewis v. State, the Court of Criminal Appeals stated: "In conducting a factual
sufficiency review, an appellate court reviews the factfinder's weighing of the evidence and is
authorized to disagree with the factfinder's determination." 922 S.W.2d 126, 133 (Tex. Crim. App.
1996). "However, when conducting a factual sufficiency review, an appellate court cannot substitute
its judgment of the factfinder since this would violate the defendant's rights to trial to jury." Id. at
129. The appellate court "views all the evidence without the prism of 'in the light most favorable
to the prosecution' . . . and sets aside the verdict only if it is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust." Id.

 As to conflicting versions of fact, these conflicts are for the jury to decide. See De Los
Santos v. State, 918 S.W.2d 565, 569 (Tex. App.-- San Antonio 1996, no pet.). Where conflicting
evidence is presented, the jury's verdict is generally regarded as conclusive unless the verdict is
manifestly unjust, "shocks the conscience," or "clearly demonstrates bias." Santellan v. State, 939
S.W.2d 155, 165 (Tex. Crim. App. 1997).

 The appellant maintains that "the jury's verdict is so against the great weight and
preponderance of the evidence as to be manifestly unjust." He argues that the evidence does not
show that he was the same person who had been chased in the police quadrant for approximately an
hour and a half and since the pursuit was not continuous and no officer was able to keep the fleeing
person in view, there is no evidence of continuity in the chase. He maintains that the presentation
of appellant to Officer Marcus by Officer Sanders suggests the possibility that the identification of
appellant is impermissibly suggestive and tainted the in-court identification at trial. See Neil v.
Biggers, 409 U.S. 188, 201 (1972). He argues that the opportunity to view the person at the scene
at the time that person was fleeing was too short and his view was that of only the side view of the
face of the person exiting; that the conviction cannot stand on mere presence near the location of a
break-in, citing Alvarado v. State, 632 S.W.2d 608, 610 (Tex. Crim. App. 1982) and Draeger v.
State, 555 S.W.2d 743, 745 (Tex. Crim. App. 1977); and that the only evidence the State had to link
appellant to the offense was the impermissibly suggestive eyewitness testimony.

 The State maintains that the evidence was sufficient to establish that appellant was one of
the individuals who committed the burglary. The two eyewitnesses identified the appellant as one
of the people who exited the store. Appellant was hiding two or three blocks from the store an hour
and a half after the burglary, "almost exhausted" and "breathing hard." The evidence does not show
that the verdict was so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. Clewis, 922 S.W.2d at 129. The State contends that the discrepancies, if any, between
the initial description of appellant's clothes and the actual clothes appellant was wearing when he
was arrested, were for the jury to resolve. Here the jury resolved the conflicts against the appellant.
De Los Santos, 918 S.W.2d at 569.

 We agree with the State and find that the evidence is factually sufficient. See Clewis, 922
S.W.2d at 129. Appellant's First Point is overruled.

POINT IV.


 In Point Four, appellant complains of the introduction of extraneous unadjudicated offenses,
which appellant contends the jury was allowed to consider at punishment.

 Appellant correctly points out that prior to 1993, evidence of an unadjudicated extraneous
offense was inadmissible on the issue of punishment during the penalty phase. Act of May 28, 1989,
71st Leg., R.S. ch. 785, § 4.04, 1989 Tex. Gen. Laws 3471, 3492, amended by Act of May 29, 1993,
73rd Leg., R.S., ch. 900, § 505, 1993 Tex. Gen. Laws 3586 (current version at Tex. Code Crim.
Proc. Ann. art. 37.07 § 3(a) (Vernon Supp. 1999)); see Grunsfeld v. State, 843 S.W.2d 521, 526
(Tex. Crim. App. 1992) (holding that it was reversible error to admit unadjudicated extraneous
offense evidence at the punishment phase of a non-capital trial). In 1993 the Texas legislature
amended article 37.07 of the Code of Criminal Procedure to allow the jury to consider at the
punishment phase of a trial extraneous offenses that were not adjudicated, but only if the State
proved beyond a reasonable doubt that the offense occurred and that the defendant committed the
offense. Tex. Code Crim. Proc. Ann. art. 37.07 (Vernon Supp. 1999). Appellant states that since
this offense occurred prior to 1993, the amendment to article 37.07 was not applicable and evidence
of the offenses was not admissible during the punishment phase of trial. Appellant argues that
allowing the introduction of evidence of said offenses constituted a violation of the ex post facto
provisions of the United States and Texas constitutions. Specifically, he objects to the Court's
allowing evidence of the fact that he had been indicted for theft of property of the value of more than
$1,500, but less than $20,000 and also indicted for the offense of delivery of cocaine.(2)

 We do not reach appellant's argument on the ex post facto issue, as the evidence was offered
for purposes of impeachment.

 At the punishment phase of the trial, the appellant took the stand and testified on direct
examination as follows:

 Q. Let me ask you this: Are you asking the jury to show you
some leniency in this case?


 A. Yes, sir.


 Q. Now, this case happened three years ago; is that correct?


 A. Yes.


 Q. Have you tried to live a good life and a decent life?


 Mr. Blount: Objection, Your Honor. He's leading his
witness.


 The Court: Don't lead your witness. The objection will be
sustained.


 Mr. Monsalvo: I'm asking him a question, Judge. I don't
think that's leading him.


 The Court: You're leading your witness.


 Q. (By Mr. Monsalvo) Can you state whether or not you've tried
to lead an exemplary type life?


 A. Yes, sir.


 Q. Have you tried to do the right thing?


 A. Yes, sir. . .


 Q. Since this incident happened, have you always tried to support
your dependents?


 A. Yes, sir.


 Q. You were kind of a wild person at one time; is that correct?


 A. I wouldn't say so, sir.


 Q. Okay. Well, have you changed a lot in the last three years?


 A. Have I improved myself?


 Q. Yeah.


 A. I make effort.


 On cross-examination by the State, appellant testified that on July 5, 1995 he was arrested
for the offense of theft of $1,500 to $20,000. He also admitted he had been indicted for that offense.
Finally, he admitted he had been booked and indicted for a drug offense.

 The State contends that the evidence establishing the pending indictments and arrests were
admissible to impeach the appellant because the appellant had opened the door on these matters.
Appellant's testimony on direct that he had tried to live an exemplary life and "do the right thing"
since he committed the burglary offense in this case, left the jury with a false impression about his
criminal record and trouble with law enforcement.

 We agree with the State. In Ramirez v. State, the Texas Court of Criminal Appeals stated as
follows:

 There is an exception to the general rule that a party is not entitled to
impeach a witness on a collateral matter. When a witness leaves a
false impression concerning a matter relating to his or her credibility,
the opposing party is allowed to correct that false impression. For
example, "when the witness, by his direct testimony, leaves a false
impression of his 'trouble' with the police, it is legitimate cross-examination to prove that the witness had been 'in trouble' on
occasions other than those about which he offered direct testimony."


802 S.W.2d 674, 675 (Tex. Crim. App. 1990) (citing Nelson v. State, 503 S.W.2d 543, 545 (Tex.
Crim. App.1974).

 If the accused is a witness, he may be impeached by prior offenses if he leaves a false
impression as to the extent of his prior arrest, convictions, charges, or trouble with the police. See,
e.g., Lopez v. State, 928 S.W.2d 528, 531 (Tex. Crim. App. 1996); Delk v. State, 855 S.W.2d 700,
704 (Tex. Crim. App. 1993); Hoffman v. State, 514 S.W.2d 248, 254 (Tex. Crim. App. 1974); Long
v. State, 820 S.W.2d 888, 895 (Tex. App.--Houston [1st Dist.] 1991, pet. ref'd.); Holden v. State,
628 S.W.2d 166, 167 (Tex. App.--Houston [14th Dist.] 1982, pet. dism'd).

 Appellant's Point Four is overruled.



POINTS II. AND V.


 Appellant maintains that he received ineffective assistance of counsel because trial counsel
failed to request at the punishment hearing that the jury be instructed that they must find the theft
of more than $1,500 but less than $20,000 and the delivery of cocaine offenses beyond a reasonable
doubt before they could consider same.

 Appellant states that ineffective assistance of counsel occurred when evidence of the two
prior indictments were admitted and (1) there was no request to the court by counsel for appellant
to charge the jury that the evidence might only be considered by the jury if it was shown beyond a
reasonable doubt that appellant had committed the offenses, citing Harrell v. State, 884 S.W.2d 154,
160 (Tex. Crim. App. 1994); and (2) counsel for appellant, at the very least, should have asked for
a limiting instruction on the permissible use of the extraneous offenses at the punishment phase of
the trial. Appellant again asserts that the law as it existed at the time of the offense precluded the
admission of unadjudicated offenses at the punishment phase under any circumstance. Tex. Code
Crim. Proc. Ann. art. 37.07 (Vernon 1981 & Supp. 1998).

 The State maintains that since they were not attempting to prove that the appellant had
actually committed these offenses, but rather to impeach the appellant on the issue of whether the
appellant had led an exemplary life since committing the burglary charged in this case, that the jury
instruction sought by appellant on proof beyond a reasonable doubt as to the extraneous offenses
would have been improper. Compare Harrell, 884 S.W.2d at 160, with George v. State, 890 S.W.2d
73, 74-75 (Tex. Crim. App. 1994).

 The State maintains that Cantrell v. State is authority for the proposition that where
testimony in question could only be used by the jury for impeachment, no limiting instruction to the
jury is required. 731 S.W.2d 84, 95 (Tex. Crim. App. 1987). In Cantrell, the defendant was
convicted of the offense of aggravated robbery. Id. at 85. The Court of Criminal Appeals, in
affirming the conviction, held that there was no error in failing to give requested limiting
instructions. Id. at 95.

In Cantrell, evidence was offered to the effect that the defendant was in prison prior to the robbery
offense charged. Id. at 94. At the conclusion of the evidence, he requested a limiting charge which
was refused. Id. The trial court admitted testimony of a police officer to the effect that while a co-defendant was on bond as a result of the instant offense, the co-defendant told the officer that at the
time of the offense, defendant had a gun and a knife and had forced the co-defendant to accompany
him to another person's house. Id. at 95. The Court of Criminal Appeals believed that it was
obvious that the State offered the evidence to impeach the co-defendant's earlier testimony. Id.

 Quoting Winfrey v. State, 56 S.W. 919, 919-20 (1900), the Cantrell Court stated:

 Where it is apparent that the testimony can be used for no other
purpose than that of impeachment, it is not necessary for the Court to
limit the purpose of the same in its charge. If it could be used
otherwise, either as an incriminating fact, or to exercise a strong,
undue, or improper influence upon the jury as to the main issue,
injurious and prejudicial to appellant, then it would have been the
duty of the court to limit and restrict its effect in his charge so that no
unwarranted results could ensue.

 

Cantrell, 731 S.W.2d at 95. The Court in Cantrell held that since such testimony could only be used
by the jury for impeachment, no limiting charge to the jury was required, citing Minor v. State, 476
S.W.2d 694, 696 (Tex. Crim. App. 1972) and Wiley v. State, 220 S.W.2d 172, 174 (1949).

 The appellant here would have been entitled to a charge limiting the jury's consideration for
the prior offenses admitted in evidence to impeachment only. Counsel did not request such a charge

nor did he object to the Court's charge for failure to limit such testimony. The appellant, therefore,
maintains that he was denied effective assistance of counsel during the punishment phase of the trial.
 In Ex parte Walker, the Court stated:

 [the] proper standard by which to gauge the adequacy of
representation by counsel at the guilt/innocence stage was articulated
in Strickland v. Washington, 466 U.S. 668 (1984) and adopted in
Texas in Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App.
1986). The test set forth in Strickland simply stated requires a two-prong analysis: (1) did the attorney's performance fail to constitute
"reasonably effective assistance," i.e. did the defense attorney's
representation fall below an objective standard of reasonableness
under prevailing professional norms; and (2) if so, was there a
reasonable probability that but for counsel's unprofessional errors, the
result of the proceeding would have been different? A "reasonable
probability" was defined by the Supreme Court as "a probability
sufficient to undermine confidence in the outcome. Strickland, 466
U.S. at 694.


777 S.W.2d 427, 430 (Tex. Crim. App. 1989).

 The above test as applied to the guilt/innocence phase, however, is not the applicable test for
ineffective assistance as applied to the punishment phase of the trial. In Ex parte Cruz, the Court
of Criminal Appeals held that the second prong of Strickland was not applicable to the punishment
stage of trial in a non-capital case. 739 S.W.2d 53, 58 (Tex. Crim. App. 1987). Instead, the Court
agreed that the standard set forth in Ex parte Duffy, 607 S.W.2d 507, 513, 516 (Tex. Crim. App.
1980) is the standard on which the effectiveness of counsel is to be judged; that is, reasonably
effective assistance of counsel, the sufficiency of which is gauged by the totality of the
representation of the accused. Cruz, 739 S.W.2d at 58.

 It therefore becomes necessary to examine the totality of representation of the accused in a
criminal trial, which includes the entire trial as well as the guilt/innocence phase of the trial.

 The record in this case is devoid of any error in either phase of the case other than the alleged
error of failing to request the Court to charge the jury as to the limited application of the
impeachment testimony concerning the extraneous offenses offered for impeachment at the
punishment phase of the trial.

 In the recent case of Ex parte Jack Carroll Welch, involving the question of whether or not
the applicant in that case was denied effective assistance of counsel during the punishment phase of
his trial because trial counsel failed to file an application for probation believing that the applicant
was not entitled to probation because of a prior deferred adjudication, the Court held that under the
Duffy standard trial counsel should have filed the motion for probation and his failure to do so denied
applicant of his right to effective assistance. Welch, No. 72, 449, 1998 WL 751136, at *3 (Tex.
Crim. App. Oct. 28, 1998)

 Although it could be argued that Welch is controlling, there is considerable difference from
the failure to afford to the defendant in a criminal trial the full range of punishment, i. e. probation,
as opposed to instructing a jury that they should not consider evidence in determining the full range
of punishment.

 The State also contends that even if a limitation charge were proper in this case, the requested
charge might draw even more attention to the extraneous arrest and indictments, which appellant had
already admitted to, and therefore, such a decision not to request such a limiting instruction might
have been the result of sound trial strategy. See Garcia v. State, 887 S.W.2d 862, 881 (Tex. Crim.
App. 1994) (holding that a decision not to request a limiting instruction was a matter of trial strategy
because it may "draw more attention to incriminating evidence"). The State argues that appellant
has failed to overcome "the presumption that counsel's representation was reasonable." Appellant's
indictment contains an allegation of a prior theft conviction, to which appellant pled "true." The
prior conviction placed the appellant in the position of facing punishment for a first degree felony.

 The Court, in its charge on punishment instructed the jury that:

 Paragraph 2 of the indictment alleges that the defendant, Roger Paez,
Jr., was convicted on or about the 25th day of October, 1990, in
Cause No. 89-CR-2264-C in Bexar County, Texas, of the offense of
theft of $750, but less than $20,000, a felony, and that said conviction
had become final prior to the commission of the offense of burglary
of a building for which you have found him guilty. To this allegation
in Paragraph 2 of the indictment, the defendant has pleaded "true."


 The Court further charged the jury that if they found that the allegation was true, as alleged
in Paragraph 2 of the indictment, they could assess punishment of the defendant at confinement in
the Institutional Division of the Texas Department of Criminal Justice for life, or for any term of
years not more than 99 or less than five.

 The burden is on the appellant to demonstrate ineffective assistance of counsel. Moore v.
State, 694 S.W.2d 528, 531 (Tex. Crim. App. 1985).

 We hold that the failure of trial counsel to have requested a charge on the issue of proof
beyond a reasonable doubt as to the extraneous offenses was not deficient conduct, and we find that
his failure to request a charge limiting the jury's consideration of the extraneous offenses to
impeachment did not constitute ineffective assistance of counsel under the Duffy test.

 Appellant's Points Two and Five are overruled.

POINTS III. AND IX. 


 In Point Three appellant complains that he was denied reasonably effective assistance of
counsel in that counsel failed to investigate appellant's case adequately.

 In Point Nine appellant complains that he received ineffective assistance of counsel because
his attorney did not object to improper arguments of the prosecutor.

 Appellant claims that two affidavits which were not attached to his motion for new trial
establish counsel's failure to investigate his case, contending that counsel never interviewed the two
affiants. The affidavits are not a part of the record in this case.

 As stated heretofore in our discussion of Points Two and Five, the Supreme Court of the
United States established a two-prong test for evaluating ineffective assistance claims. Strickland
v. Washington, 466 U.S. 668, 687 (1984)

 The burden of proving ineffective assistance of counsel is upon the appellant and he must
do so by preponderance of the evidence. Patrick v. State, 906 S.W.2d 481, 495 (Tex. Crim. App.
1995). Appellant "must identify the acts or omissions of counsel that are alleged not to have been
the result of reasonable professional judgment." Strickland, 466 U.S. at 690; see also Greene v.
State, 928 S.W.2d 119, 122 (Tex. App.--San Antonio 1996, no pet.).

 As far as the second prong of the Strickland test is concerned, again the burden is upon the
appellant to show "that counsel's errors were so serious as to deprive the appellant of a fair trial, a
trial whose result is reliable." Strickland, 466 U.S. at 687.

 When alleging ineffective assistance based on counsel's failure to conduct a sufficient
investigation, the appellant must show how his representation would have benefited from the
additional consultation. Harling v. State, 899 S.W.2d 9, 12 (Tex. App.--San Antonio 1995, pet.
ref'd). That is, there must be a showing of prejudice to the effect that counsel's ineffective
performance rendered the result unreliable or fundamentally unfair. Since the affidavits are not
before us and not a part of the record, the allegations in the affidavits, if any, cannot be accepted as
a fact. See Miranda v. State, 813 S.W.2d 724, 738 (Tex. App.--San Antonio 1991, pet. ref'd.).
Nothing is presented for review.

 In Point Nine appellant complains that he received ineffective assistance of counsel because
his attorney did not object to alleged improper arguments of the prosecutor.

 As set out in the briefs, his claim is predicated upon the prosecutor's closing argument at the
guilt/innocence stage of the prosecution, as follows:

 Now, Officer Marcus saw the defendant, and he ran around the wall
and he saw him again. He got two looks at him. You heard that
evidence. You know what the evidence is. Then the chase began,
and it all fits together very nicely.


 However, the testimony in the record of Officer Marcus established that the prosecutor's
argument is supported by the record:

 . . . as [the suspects] were running towards that area, I went around
to the front to make sure nobody was coming out the front; and then
as they did that, I caught one of them as they were going over and got
a look at them again, which was subject one, as he was going over the
part of the brick wall and started jumping fences.


 Points Three and Nine are overruled.

POINT VI.


 In Point Six, appellant complains that the trial court erred when it admitted Officer Marcus'
in-court identification of appellant.

 Appellant predicates his contention on the arguable fact that Officer Marcus had but a brief
opportunity to view the persons fleeing from the La Fiesta Store; that it was not until some two hours
later that appellant was presented in handcuffs to Officer Marcus for identification. Appellant
contends that due process rights afforded him with regard to admission of identification evidence
were violated in that the pretrial identification procedure was suggestive and conducive to mistaken
identification, leading to the subsequent use of that identification at trial, citing Stovall v. Denno, 388
U.S. 293, 297 (1967) and Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988).

 Appellant contends that as a single suspect under arrest at the time of his presentation by
Officer Sanders to Officer Marcus, this is similar to the presentation of a single photograph to a
prosecuting witness. See Madden v. State, 799 S.W.2d 683, 695 (Tex. Crim. App. 1990) and
Herrera v. State, 682 S.W.2d 313, 318 (Tex. Crim. App. 1984).

 The record shows that counsel for the appellant did nothing to challenge the identification
of appellant other than cross-examination. There was no pre-trial identification hearing in an attempt
to suppress the in-court identification based on the sole presentation of appellant by a fellow officer
an hour and a half after the officer had seen two individuals running out of a store, nor was there any
objection made that the identification was tainted at the time Officer Marcus testified.

 The State contends that appellant has therefore waived any error as to the admission of the
identification testimony, citing Archie v. State, 615 S.W.2d 762, 764 (Tex. Crim. App. 1981) and
Baskin v. State, 672 S.W.2d 312, 314 (Tex. App.--San Antonio 1984, no pet.).

 In Archie, the defendant was charged with the offense of aggravated rape, which event
allegedly occurred on April 4, 1977. Archie, 615 S.W.2d at 764. On April 19, 1977, the prosecutrix
saw the defendant in the security office of the university police. Id. The facts there reflect that the
prosecutrix had an adequate opportunity to view the defendant at the time of the offense and that her
identification was not tainted by any confrontation. Id. The Court stated that there was no objection
offered as to the identification and therefore, nothing was presented for review, citing Johnson v.
State, 504 S.W.2d 493, 495 (Tex. Crim. App. 1974); Ashford v. State, 502 S.W.2d 27, 28 (Tex.
Crim. App. 1973); and Pete v. State, 501 S.W.2d 683, 687 (Tex. Crim. App. 1973). Id.

 In Baskin, defendant was convicted for burglary of a habitation. Baskin, 672 S.W.2d at 313.
The facts indicated that the complainant arrived home from work and as he entered the house
through the back door, he was confronted by a black man holding a shotgun. Id. The complainant
described the appellant as a black man with a beard of medium height and build. Id. He testified
that the black man took money from his wallet, struck him over the head with the shotgun and then
shot him in the leg. Id. The defendant at trial requested that the court conduct an in-court lineup.
Id. He argued at that time that the complainant had no independent recollection of the events at the
time of the offense, but that his in-court identification was based on the photographic spread
identification made at the hospital, and that appellant was the only black man in the courtroom. Id.
The motion for the in-court lineup was filed after the jury was impaneled, after the defendant had
pled not guilty and after the first witness was called. Id. There was no request for a pretrial hearing
on a motion to suppress the identification. Id. at 313-14. The court concluded that a trial court is
not required to hold an in-court identification process during trial and that it was within the
discretion of the trial court whether or not to do so. Id. (citing Tex. Crim. Proc. Code Ann. art.
28.01 § 1(6) (Vernon Supp. 1984) and Hicks v. State, 508 S.W.2d 400, 403 (Tex. Crim. App. 1974)).
The Court of Criminal Appeals concluded that appellant waived error, if any, by not timely filing
a motion to suppress the identification. Baskin, 672 S.W.2d at 314.

 We agree with the State that the appellant here has waived error, if any, as to the admission
of the identification testimony. Appellant's sixth point is overruled.

POINT VII.


 Appellant claims that he was denied due process of law because the State either failed to
disclose exculpatory or useful evidence, or destroyed it.

 Appellant requested during trial that the State produce a recording of the "911" calls made
to the San Antonio Police Department on the night he was arrested. Appellant asserted that said calls
would "help" [his] case. He made this request after all of the evidence had been presented and
before he rested.

 In California v. Trombetta, 467 U.S. 479, 488-89 (1984), the Supreme Court held that the
duty to preserve evidence is limited to that evidence which has an apparent exculpatory value before
destruction. In U.S. v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982), the Supreme Court held that
the defendant must show that the lost evidence was both favorable and material and in Arizona v.
Youngblood, 488 U.S. 51, 58 (1988), the Court held that the State is not usually penalized unless the
State acted in bad faith. The appellant here argues that his due process rights were violated by the
State's failure to maintain the "911" calls made to the San Antonio Police Department on the night
he was arrested.

 The State cites Siegel v. State, where the Fourteenth Court of Appeals explained that:

 The holding in Brady requires disclosure only of evidence that is both
favorable to the accused and material either to guilt or to punishment.
In order to invoke the Brady doctrine, the accused must present
evidence that: (1) the prosecution suppressed or withheld evidence;
(2) this evidence would have been favorable to the accused; and, (3)
this evidence would have been material to the accused's defense.


814 S.W.2d 404, 407 (Tex. App.--Houston [14th Dist.] 1991, pet. ref'd). The State further contends
that a criminal defendant must show bad faith to establish that the failure to preserve potentially
useful evidence constitutes a denial of due process. A mere showing that the lost evidence might
have been "favorable" does not establish materiality. Pachecano v. State, 881 S.W.2d 537, 543
(Tex. App.--Fort Worth 1994, no pet.).

 We agree with the State that appellant has failed to establish any of the above prerequisites
and that there is nothing presented for review.(3)

 Appellant's Point Seven is overruled.

POINT VIII.


 Appellant contends in Point Eight that the trial court erred when it allowed one witness to
use another person's writing to refresh his memory. During Officer Marcus' testimony, he was
shown the report made by another officer in order to refresh his memory.

 The report itself was not offered in evidence. It is not impermissible for a witness to use a
document written by another person to refresh his memory. Tex. R. Crim. Evid. 611. Appellant's
Point Eight is overruled.

POINT X.

 In Point Ten, appellant complains that the trial court erred when it admitted a photograph of
appellant which had been taken after his arrest. Appellant maintains that the admission of the
photograph was improper because the photograph is suggestive of appellant's guilt. Appellant did
not make this objection at trial and therefore cannot raise the point for the first time on appeal. See
Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990); Clemons v. State, 893 S.W.2d 212,
216 (Tex. App.--El Paso 1995, no pet.). Appellant's Point Ten is overruled.

POINT XI.


 In Point Eleven, Appellant argues that the trial court erred when it instructed the jury
regarding the law of criminal responsibility for another.

 Appellant complains that the trial court's charge during the guilt/innocence stage of the
proceedings on the law of criminal responsibility was improper, citing Brooks v. State, 580 S.W.2d
825 (Tex. Crim. App. 1979). There was no objection to this provision in the court's charge made
at trial. The court's charge complied with Tex. Penal Code Ann. § 7.02(a)(2). Appellant's Point
Eleven is overruled.

POINT XII.


 Appellant contends that the trial court erred when it failed to instruct the jury on the law of
"circumstantial evidence."

 Appellant complains that the jury was not instructed on "the law of circumstantial evidence."
There was no objection to the charge or request on this issue made at the time of trial. In Hankins
v. State, 646 S.W.2d 191, 199 (Tex. Crim. App. 1983), the Court of Criminal Appeals repudiated
the necessity to instruct the jury on circumstantial evidence. See Geesa v. State, 820 S.W.2d 154,
159 (Tex. Crim. App. 1991). Appellant's Point Twelve is overruled.

 There being no reversible error, the judgment of the trial court is affirmed.


 Frank Maloney

 Justice

Publish




1. Assigned to this case by the Chief Justice of the Supreme Court of Texas.
2. On September 1, 1993, the Texas Legislature amended article 37.07 to allow admission of unadjudicated
extraneous offenses at the punishment trial of noncapital cases. Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a) (Vernon
Supp. 1998). This amendment applies only to trials for offenses that are committed on or after September 1, 1993.
Voisine v. State, 889 S.W.2d 371, 372 (Tex. App.--Houston [14th Dist.] 1994, no pet.). As pointed out by appellant, the
offense occurred in this case prior to 1993. The amendment to article 37.07 is not applicable to this case.
3. To his request that this case be abated for a hearing on the exculpatory evidence, the Texas Court of Criminal
Appeals in State v. Garza, 931 S.W.2d 560, 563-64 (Tex. Crim. App. 1996) has held adverse to appellant's request.


Return to
4th Court of Appeals Opinions